Lanier v. McIntosh.

LANIER v. McINTOSH *et al.*, *Appellants.*

Division One, November 6, 1893.

1. **Mortgage:** ASSIGNMENT: LEGAL AND EQUITABLE TITLE. An assignment of a mortgage in order to transfer the entire legal and equitable interest of the mortgagee must be by deed containing such words of grant as will show an intention of the parties to make a complete transfer.

Lanier v. McIntosh.

2. ——: ——: ——. Where a formal assignment is thus made and the bond or note or other evidence of debt is assigned and delivered, the assignee becomes invested not only with the legal estate, but with any power of sale contained in the mortgage.

3. ——: EQUITABLE ASSIGNMENT. An equitable assignment does not require the foregoing formalities, and in this state the mere assignment of the debt carries with it the mortgage as an incident which may be enforced by the assignee in his own name.

4. ——: PAYMENT AND FORECLOSURE SALE: MISDESCRIPTION OF THE PREMISES. A foreclosure sale and payment of the purchase money, which do not pass the legal title to the land, owing to a misdescription in the advertisement and deed, do not operate as a discharge of the debt and mortgage, but confer on the purchaser an equitable right to the security of the mortgage for the amount of the mortgage debt.

5. ——: ——: ——. An entry of satisfaction on the record of a mortgage made by the mortgagee after a foreclosure sale, under the mistaken belief that the sale had effectually foreclosed the mortgage, is not conclusive on the purchaser, and he may show that no title passed at the sale because of a misdescription of the premises in the advertisement and deed.

6. ——: ——: ——. Such ineffectual foreclosure sale will not exhaust the power of sale contained in the mortgage so as to prevent a resale to correct the error in the first.

7. ——: ——: ——: ESTOPPEL. A mortgagor who accepts the surplus arising from a foreclosure sale of land and who requests a resale to correct an error in the first sale and who makes a contract with the purchaser whereby the latter is to reconvey the land on being reimbursed for the purchase money advanced, is estopped to assail the validity of the resale.

8. ——: FORECLOSURE: EJECTMENT: OUTSTANDING TITLE. A mere right of redemption in a third person after foreclosure is not such an outstanding title as will defeat a recovery in ejectment against the mortgagor.

9. ——: ——: ——: ——. The outstanding title in such case must be one that the owner of the title himself could recover on, were he asserting it in the action.

*Appeal from Newton Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

*George Hubbert* with *Benton & Sturgis* and *A. J. Harbison* for appellants.

(1) Even upon the hypothesis that the mortgage by J. D. and Mary Shields to Kunkel had not been satisfied or fully paid, the evidence, clearly tending to prove at least a partial payment, entitled defendants, under the pleadings, to an ascertainment of the balance due, and administration of their rights by suitable directions and rulings. (2) Kunkel had no authority to delegate the power of sale; and the fact that he was in "eye shot" of the place of sale did not make it his. *Graham v. King,* 50 Mo. 22; *St. Louis v. Priest,* 88 Mo. 612; *Brickenkamp v. Rees,* 69 Mo. 426; *Spurlock v. Sproule,* 72 Mo. 503. (3) Power of sale depended upon conditions specified in the mortgage, chief amongst which was that of non-payment of the note. But the note had been fully paid and surrendered. It is no reply to this suggestion to say that the circumstances were such that Seabourn had the right of subrogation to the mortgage by reason of alleged mistake. For then, if subrogation means assignment, Seabourn was the person to execute the power of sale. *Prichett v. Jones,* 63 Mo. 195; 4 Kent's Commentaries, [*] p. 147 [11 Ed.], p. 161. (4) If assignment be not meant, then the right was of equitable cognizance only. The conditions of the execution of the power not being present, no sale could be made for any purpose, much less to cut off redemption. *McNair v. Picotte,* 33 Mo. 57; 2 Jones on Mortgages, sec. 886, 889. (5) A release of mortgage by entry of record, as in this case, is virtually a statutory, recorded, acknowledged, attested reconveyance—much more than a mere receipt for money; and it has the effect of a release by deed, formally executed and delivered. Anything to the contrary must

overlook the purpose and force of our statute. 2 Jones on Mortgages, secs. 974, 985, 989 and 1015; Revised Statutes, 1879, sec. 3313.   (6) Such release after condition broken, though debt not paid, leaves it standing unsecured and upon the footing of a simple debt. 2 Jones on Mortgages, sec. 984.   (7) Only a new instrument, executed with same as the original formalities, can revive a released mortgage; and if it be by man and wife, both are necessary parties to such new instrument. 2 Jones on Mortgages, secs. 946, 947.   (8) The testimony of Kunkel that there was no mistake of fact in the matter of entering satisfaction of record, puts him, and all claiming under him in that regard, beyond the reach of remedy, whether the same be sought by direct or indirect means.   2 Jones on Mortgages, sec. 969; *St. Louis v. Priest*, 88 Mo. 612; *Hendrix v. Wright*, 50 Mo. 311; *Guy v. DuPrey*, 16 Cal. 195.   (9) Even in equity, relief against mistake of fact will be awarded only where the mistake might have been avoided by diligence; and this rule applies to bills for cancellation of release of mortgages.   2 Jones on Mortgages, sec. 969.   (10) At all events, it is only equity that can administer a remedy for mistake which has brought about a fact otherwise binding at law; whether the remedy sought be through the equitable principle of subrogation or otherwise.   Here plaintiff chose his remedy and should stand by it.   Sheldon on Subrogation, sec. 4; *White v. Rush*, 58 Mo. 105; *Gamble v. Daugherty*, 71 Mo. 599.   (11) The legal title, if plaintiff ever had any, is shown to be outstanding by his own act and no equity could avail him in this action.   *Thompson v. Lyon*, 33 Mo. 219.

*H. C. Pepper* for respondent.

(1) It was competent for the plaintiff to introduce parol evidence to show that the acknowledgment of

satisfaction of the mortgage was made through mistake, and that such mistake is always, both at law and in equity, open to explanation. *Christy v. Scott*, 31 Mo. App. 31, and cases cited. Such mistake is simply "that result of ignorance of the law or fact which has misled a person to commit that which, if he had not been in error, he would not have done." Story's Equity Jurisprudence, sec. 110, note 1. Plaintiff cannot be driven to an action in equity to cancel the entry of satisfaction, and that he may impeach the same by parol evidence under the pleading in ejectment. *Joerdens v. Schrimpf*, 77 Mo. 383, and cases cited. (2) Shields agreed to, and requested that the land be resold under the power in the mortgage to correct the mistake in the first sale. This, of itself, estopped him from denying the validity of the second mortgagee's deed from Kunkel to Seabourn. Jones on Mortgages [3 Ed.], sec. 1484. (3) If it be claimed that plaintiff is the assignee only of the mortgagee by reason of any irregularity in the execution of the power of sale in the mortgage, and that an absolute estate in the land was not transferred to him, yet, as such assignee, plaintiff is surrogated to the rights of the mortgagee, one of which is the right of possession. *Pickett v. Jones*, 63 Mo. 198; *Jones v. Mack*, 53 Mo. 147; Jones on Mortgages [3 Ed.], sec. 1678. (4) If the second sale under the power in the mortgage be invalid on account of any irregularity, and the mortgagee's deed in pursuance thereof did not convey the absolute title in the land, yet, such deed and the subsequent conveyances by deed were sufficient to transfer the legal estate in the land to plaintiff. Jones on Mortgages [3 Ed.], sec. 1902. Plaintiff was, at the time of bringing this suit, the legal owner of the land in controversy, and entitled to the possession of the same, the judgment of the circuit court, therefore, ought to be sustained.

MACFARLANE, J.—The suit is ejectment in the usual form, to recover a parcel of land twenty-two rods and six feet long by fifteen rods and seven feet wide, in McDonald county.   The answer admitted the possession of McIntosh as tenant of his codefendant, J. D. Shields, but denied all other allegations.   It also set up the following special defense:

"Defendants, for further answer, say and aver that at one time in the year 1886, defendant, Shields, gave to one John A. Kunkel a note for the sum of $270, to bear interest at the rate of ten per cent. per annum, to secure which he executed, a mortgage upon the property sued for herein, to the said Kunkel, but the same has been long paid and satisfied, so no ground of action could exist on that account against him; notwithstanding which defendants are advised, and aver that plaintiff pretends to make some claim of right to the possession of the land as a pretended assignee of the said mortgage after condition broken.

"Defendant Shields, while protesting that the said mortgage was long ago satisfied, comes and offers to pay into the court, for the benefit of the lawful owner of the said mortgage debt, all and every sum and amount which may appear from the evidence in this case to be and remain unpaid thereon, if any, if it be found that the plaintiff is vested with the rights of the said mortgagee."

The reply admits the execution and delivery of the note and mortgage by J. D. Shields, but denies that he ever paid the note or satisfied the mortgage as charged in the answer.

In support of his title plaintiff offered in evidence, the following deeds:   *First.*   Mortgagee's deed from John A. Kunkel to J. C. Seabourn, dated October 29,

VOL. 117—33

1887. This deed purports to convey the land under power of sale contained in the mortgage made by defendant Shields, and described in the answer. *Second.* Quitclaim deed from J. C. Seabourn to Geo. W. Corum, dated May 2, 1888. *Third.* Mortgage deed from Geo. W. Corum to plaintiff, L. C. Lanier, to secure note for $300 due in ten days with power of sale in case of default, dated April 5, 1889. *Fourth.* Mortgagee's deed from L. C. Lanier, under power of sale, to Alphonso Howe, dated May 18, 1889. *Fifth.* Quitclaim deed from Alphonso Howe to plaintiff Lanier. No date given in abstract.

The record of the mortgage from defendant Shields to Kunkel, showed an entry of satisfaction on the margin, dated October 16, 1886, and signed by Kunkel, the mortgagee.

In explanation of that entry of satisfaction Kunkel testified that prior to the entry he had undertaken to sell the property under his mortgage, but misdescribed the land in both, the advertisement and deed. At this sale Seabourn was also the purchaser, paying therefor $305, which paid the debt and cost, and $17 or $18 over, which was paid to shields, as mortgagor, to whom was delivered the note and mortgage, and he then entered satisfaction. That, on learning of the misdescription of the land in the previous sale and deed, at request of the purchaser and Shields, he resold the property merely to correct the mistake. On this sale nothing was paid.

The evidence also tended to show that these purchases at mortgage's sale were made by Seabourn at the request of Shields, his son, Abe, and Gus Corum and Seabourn undertook it for the benefit of defendant Shields. Seabourn gave them an agreement to convey as they should direct upon repaying him. The parties borrowed the money to pay for the land and Seabourn

signed the note as security with the understanding that when the amount was paid he would convey as directed. Seabourn had the note to pay but the money was afterwards repaid to him, a part by Abe Shields but most of it by Corum and at the request of Shields, Abe and Corum, he conveyed the land to the latter. The evidence is not very clear from or by whom Seabourn was repaid. The evidence shows further that the second sale made under the Shields mortgage was conducted by an agent, the mortgagee then being sick. Howe was the stepson of Corum, and married the daughter of plaintiff.

There was conflict in the evidence as to who was in possession of the property after Seabourn gave it up, which, if important, cannot be intelligently settled from what appears on the abstract.

The facts were tried by a jury and at request of plaintiff the court gave the following instructions:

"The court instructs the jury that if they believe from the evidence that J. D. Shields and wife executed and delivered the mortgage deed to John A. Kunkel, read in evidence, and that after condition broken in said mortgage, said Kunkel attempted to advertise and sell the land therein described, but by mistake failed to describe the said land in the advertisement and the mortgagee's deed, and that J. C. Seabourn became the purchaser at such sale, and paid the note, interest and costs secured by said mortgage; and if the jury further find that by mistake in the first sale Kunkel entered satisfaction on the margin of the record of the said mortgage, and that thereafter, at the request of J. D. Shields, he advertised and sold the land in said mortgage deed according to the conditions therein, and executed and delivered to J. C. Seabourn the mortgagee's deed read in evidence, then such convey-ance vested the legal title to the land in controversy in

Seabourn, and that J. D. Shields is stopped from denying Seabourn's title, or those claiming under him; and the successive conveyances from Seabourn and others, claiming under him, had the effect to vest in plaintiff all right and title of defendant Shields."

Defendant asked but the court refused to so instruct, *first*, that payment of the mortgage debt by Seabourn, the surrender of the note to Shields, and the entry of satisfaction of the mortgage on the record extinguished the power of sale, and the second sale and deed thereunder were nullities; *second*, though the attempted sales may have operated as an assignment of the debt and mortgage to Seabourn, yet plaintiff, by the conveyances to him, succeeded to no such rights under the mortgage as would entitle him to recover in ejectment from the mortgagor; *third*, that under the pleadings and evidence defendant Shields should have been permitted to recover.

I. It is conceded that the first sale attempted by the mortgagee, in failing to decribe the land, either in the advertisement or deed, did not pass to the purchaser the legal title to the property sold. The same result would follow a conveyance, with a like error by the owner. It is insisted, however, by defendants that the sale and payment of the purchase money in discharge of the mortgage debt gave the purchaser no equitable right to the security but operated as a complete and absolute discharge of the debt and mortgage. To that proposition we do not yield assent.

An assignment of a mortgage, in order to transfer the entire legal and equitable interest of the mortgagee must be by deed containing such words of grant as will show an intention of the parties to make a complete transfer. When a formal assignment is thus made, and the bond, note, or other evidence of the debt is assigned and delivered, the assignee will be

invested not only with the legal estate but with any power of sale contained in the mortgage. *Pickett v. Jones,* 63 Mo. 199; 1 Jones on Mortgages, sec. 786; 15 Am. & Eng. Ency. of Law, 842.

An equitable assignment does not require these formalities. In this state the mere assignment of the debt carries with it the mortgage, as an incident, which may be enforced by the assignee in his own name. And an equitable assignment will be declared and enforced, by way of subrogation, whenever right and justice require that it should be done. So it is held that a sale of the mortgaged premises which is ineffective on account of defects in the execution of the power, will operate as an equitable assignment of the mortgage to the purchaser if he paid the purchase money in good faith, and it was applied to the satisfaction of the mortgage debt. *Wilcoxon v. Osborn,* 77 Mo. 632; *Honaker v. Shough,* 55 Mo. 472; *Priest v. St. Louis,* 103 Mo. 657; 2 Jones on Mortgages, sec. 1678.

The evidence in this case shows that Seabourn purchased in good faith and paid to the mortgagee the purchase price, which was applied to the payment of the debt secured. In this purchase he intended to buy, and supposed he had bought, the mortgaged property. He got nothing in law for the money paid and he was in equity entitled to the security of the mortgage for the amount due on the note when paid.

II. After a foreclosure sale under a mortgage the title of the purchaser comes through the mortgage. The mortgage is not satisfied but forclosed. It is, therefore, in such case improper to make an entry of satisfaction on the record. The entry made by the mortgagee in this case was intended to mean nothing more than that the mortgage had been satisfied by a sale of the premises. It could have no greater effect, at

518 SUPREME COURT OF MISSOURI,

least between the parties, than the sale and deed there-under. Indeed, after the equitable assignment of the mortgage, Kunkel, as mortgagee, as between himself and the purchaser, had no power to enter satisfaction. Entries of this kind are open to explanation by parol evidence and a direct proceeding to impeach them is not required. *Joerdens v. Schrimpf*, 77 Mo. 384; *Valle's Administratrix v. Iron Mountain Co.*, 27 Mo. 455; *Chappell v. Allen*, 38 Mo. 213.

The evidence shows very conclusively that this entry was made without authority under a mistaken idea of duty, and under the belief that the sale had effectually foreclosed the mortgage. It should not be allowed to stand in the way of the purchaser's rights.

III. As to the effect of the second sale. By a recent well-considered decision of this court rendered *in banc* it was held that a sale and conveyance of the mortgaged premises, by a mortgagee or trustee acting under a power, though defectively executed, passed the legal estate to the purchaser subject to the right of redemption. In such case the title passes by a conveyance of the property by one holding the title. *Schanewerk v. Hoberecht, ante*, p. 22.

The first sale and conveyance here was not of the mortgaged property at all, owing to a misdescription, and the legal title was not affected, but remained in the mortgagee, who held it in trust for the benefit of the equitable assignee of the debt. Though the validity of the second sale may be questioned by reason of the irregularity arising from the absence of the mortgagee when it was made, and the employment of an agent to conduct it, there can be no doubt that the legal title passed to Seabourn by the deed, and under whom plaintiff claims through mesne conveyances.

IV. Aside from all these considerations we think the evidence conclusively shows that defendant Shields, by his conduct and agreements, is estopped to dispute the absolute foreclosure of this mortgage. The first sale was made or attempted at his request with the information that his son would buy the property. After the sale he received from the mortgagee $16 or $17 which remained of the proceeds of the sale after the debt had been paid. The second sale was made by Kunkel at the request of Seabourn and defendant Shields, and for the purpose, as they declared, of correcting the mistake in the previous sale and of putting the title in Seabourn. So far as Kunkel acted it was under the direction of Shields. Shields' conduct is explained in the undisputed evidence that Seabourn, in making the purchases, was acting for him, his son, and Corum under an agreement by which he was to convey the land, according to their direction, upon being reimbursed for what he had advanced. After the title, at the request of Shields, had been vested in Seabourn a new arrangement was made wholly independent of the mortgage. Under that agreement Seabourn was to hold the title as security for the money advanced to pay the mortgage debt. Under this transaction and contract the right of redemption, if it would otherwise have existed, was clearly waived by Shields, and he was estopped to dispute the validity of the mortgagee's sales. *Austin v. Loring*, 63 Mo. 22; *Nanson v. Jacob*, 93 Mo. 346; 2 Jones on Mortgages, sec. 1484.

If defendant has any remedy, it is upon the contract under which Seabourn took and held the title for him, upon which no issue was made or determined in this record.

V. Under the foreclosure sale the legal title of the heirs of Mrs. Shields, wife of defendant, who died before the first sale, if any they had, also passed to the pur-

chaser and no one entitled is seeking to redeem their interest. A mere right of redemption in a third person, after foreclosure, is not such an outstanding title as will defeat a recovery in ejectment. The title "must be such a one as the owner of the title himself could recover on if he were asserting it in an action. It must be a present, subsisting and operative title." *McDonald v. Schneider*, 27 Mo. 405; *Woods v. Hilderbrand*, 46 Mo. 284.

We see no error in the record and the judgment is affirmed. All concur.