# BENTON LAND COMPANY v. ZEITLER et al., Appellants.

### In Banc, June 2, 1904.

1. **EJECTMENT: Outstanding Title: Deed of Trust.** A deed of trust is not such an outstanding legal title as will, before entry or foreclosure, although the condition has been broken, defeat a recovery in an action of ejectment as between persons who do not claim thereunder. [Overruling Howard v. Thornton, 50 Mo. 291.]

2. ———: **Extinguishment of Deed of Trust by Substitution Mortgage.** The owner of land made two deeds of trust for the benefit of a company, and then conveyed the land to N., and the second deed of trust was foreclosed and the land sold to B., and then B. conveyed by an unrecorded quitclaim deed to N., and N. made two deeds of trust for the benefit of the same company, and in the first of them recited that it was given in lieu of

and substitution for the former deed of trust held by the same beneficiary. *Held*, that the acceptance of this deed of trust by that company waived, discharged and released the first deed of trust, so that the effect was to divest out of the trustees named therein whatever title had been vested in them by the first deed of trust.

3. ———: **Deed of Trust: Modern Doctrine.** The modern law in reference to mortgages and deeds of trust is that the title is vested in the mortgagee or trustee only for the purpose of security. If the debt is not paid at maturity the mortgagee or trustee is entitled to take possession of the property; not, however, as the legal owner, but solely for the purpose of security.

4. **APPELLATE PRACTICE: Issues at Trial: Delivery of Deed.** Where, at the trial, no issue was made as to the delivery of a deed upon which plaintiff relied, that issue can not be considered on appeal.

5. **DELIVERY OF DEED: Inference Arising From Facts.** The fact that a conveyance was beneficial to a purchaser of land, and that thereafter he dealt with the property as its owner by giving two deeds of trust thereon and then by conveying the equity of redemption therein, are facts of such moment as warrant the court in drawing the inference that the deed to him was delivered to him, although it was not recorded.

6. **DEED OF TRUST: Foreclosure: Maturity of Debt.** A note by its terms made to mature on a certain date may by a separate agreement be made to mature at a prior date, and if not paid according to the terms of that agreement, the deed of trust securing it may be foreclosed before the date of maturity mentioned in the note itself.

7. ———: ———: ———: **Notice.** And persons who trace their title through such a deed of trust, take with notice of such separate agreement.

8. ———: ———: **Selling in Bulk: Appellate Practice.** Where it can not be determined from the parts of the deed of trust set out in the abstract whether the land was to be sold in parcels or in the bulk, the mere fact that the land was sold in the bulk will not vitiate the sale. Especially should that be the holding where the party attacking the sale does not offer to redeem and does not ask for equitable relief, but simply interposes a sale made in that way as a defense to the purchaser's suit in ejectment.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft*, Judge.

AFFIRMED.

*Hugh D. McCorkle, P. W. Haberman* and *Clifford B. Allen* for appellants.

(1)   The first defense seeks to show the straight legal or paper title in defendants.   It submits that they hold the legal title by an unbroken chain from the common source of title.   In ejectment the legal title must rest with the plaintiff.   Schanewerk v. Hoberecht, 117 Mo. 22; Hume v. Hopkins, 140 Mo. 65; Keat v. Baker, 141 Mo. 180.   (2)   The fundamental principles of law governing ejectment are:   (a)   Plaintiff must recover on the strength of his own legal title.   Dunlap v. Henry, 76 Mo. 106; Beal v. Harmon, 38 Mo. 439; Mulherin v. Simpson, 124 Mo. 616; Simpson v. Simpson, 27 Mo. 288; McReynolds v. Grubb, 150 Mo. 352.   (b)   He can not recover on an equitable title.   Hunt v. Selleck, 118 Mo. 588; Williams v. Carpenter, 35 Mo. 70; Kingman v. Sievers, 143 Mo. 519.   (c)   He can not recover upon an equitable estoppel.   Hayes v. Livingston, 22 Am. 533; Robertson v. Pickerel, 109 U. S. 608; Nix v. Collins, 65 Ga. 219; Winslow v. Cooper, 104 Ill. 238; Thompson v. Campbell, 57 Ala. 188; Hamlin v. Hamlin, 19 Me. 141.   (3)   Plaintiff is entitled to no benefit from the unrecorded deed from it to Nesbit, nor to have the same considered in its chain of title, because it offered no proof of the delivery of such deed to Nesbit, and without such delivery the deed has no force or effect and is inoperative.   Hammerslough v. Cheatham, 84 Mo. 13; Turner v. Carpenter, 83 Mo. 333.   (4)   In the case of deeds duly placed of record, the law raises the presumption that the same have been delivered to the grantees therein named, and such presumption is conclusive unless rebutted.   Warren v. Pres't, etc., 15 Ill. 236; Heil v. Reddin, 45 Kan. 562; Patrick v. Howard, 47 Mich. 40; Pierce v. Danforth, 13 Mo. 360; Lawrence v.

Farley, 9 Abb. N. C. 371; Eauclaire Lbr. Co. v. Anderson, 13 Mo. App. 429.    But, in the case of an unrecorded deed, the presumption fails, because, without recording, it is held that delivery will not be presumed from the mere execution and acknowledgment of a deed.    Turner v. Carpenter, 83 Mo. 333; Huey v. Huey, 65 Mo. 689; Boyd v. Slayback, 63 Cal. 493; Alexander v. Kernel, 81 Ky. 356; Burton v. Boyd, 7 Kan. 26.    (5)    Where the unrecorded deed is found in the possession of the grantor (as was the unrecorded deed in this case), such possession raises the presumption that such deed has never been delivered.    Phillips v. Phillips, 50 Mo. 603; Mitchell v. Ryan, 3 Ohio St. 383; Bernheim v. Horton, 103 Ala. 380.    (6)    Where an unrecorded deed is not clearly a deed for the benefit of the grantees, the presumption arises that the deed was never delivered to and accepted by the grantee.    Renfro v. Harrison, 10 Mo. 411; Cravens v. Rossiter, 116 Mo. 338; Gifford v. McCloskey, 48 Hun 350; Higman v. Stewart, 38 Mich. 513.    (7)    The quitclaim deed of Nesbit to the Benton Land Company, for the purpose of correcting and confirming the trustee's deed (in view of the other facts and circumstances preceding the giving of such quitclaim deed), negatives the pretense of the unrecorded deed having been delivered, and is wholly inconsistent with the idea of such deed having been delivered. (8) There is nothing in the peculiar facts of this case to put defendants upon inquiry as to the existence of an unrecorded deed.    On the contrary, the suit brought by Nesbit to set aside the trustee's deed, and the recitals in the quitclaim deed subsequently given by Nesbit, pointed to the conclusion that the Nesbit deeds of trust were given and accepted under the mistaken idea that Nesbit still held the title, notwithstanding the foreclosure, and thereby diverted the inquiry from any idea of an unrecorded deed.    Hickman v. Green, 123 Mo. 165; Freeman v. Moffitt, 135 Mo. 269.    (9)    Defendants by accepting a deed with general warranty "except as against" certain

incumbrances, and by the payment of interest thereon, are not estopped to deny the validity of such incumbrances. Brooks v. Owen, 112 Mo. 251; Beland v. Brewing Assn., 157 Mo. 593; Robertson v. Pickerel, 109 U. S. 608; Douthitt v. Stinson, 63 Mo. 268; Reinhardt v. Lead Co., 107 Mo. 627. (10) The delivery of the unrecorded deed being neither proved or presumed, can not be considered to support the deeds of trust given by Nesbit. Such deeds, having been given at a time when Nesbit had no title, either legal or equitable (at most merely an equitable claim) were invalid and illegal. Schanewerk v. Hoberecht, 117 Mo. 22; Kennedy v. Siemers, 120 Mo. 73. (11) Prior to default or condition broken, a trustee in a deed of trust has no power to make a valid sale of the trust property, and a sale under such conditions is ineffectual to pass the title. Long v. Long, 79 Mo. 644; In matter of Mayfield, 17 Mo. App. 684; Foster v. Boston, 133 Mass. 141; Richards v. Holmes, 18 How. 143; Jackson v. Lawrence, 117 U. S. 679. (12) A trustee should not be personally interested in the debt secured, nor closely related to either by blood or interest, nor a paid employee of the beneficiary, and he should be impartial and indifferent between the parties interested. Long v. Long, 79 Mo. 644; In matter of Mayfield, 17 Mo. App. 684. (13) Where property is susceptible of division, and it will bring more by being divided and sold in separate parcels or lots than by being sold in a body, or where by a sale of a part of the premises a sufficient amount can be realized to pay off the secured debt, then it is the duty of the trustee to make the division, and if he fails in this the sale will be held invalid. Tatum v. Holliday, Admr., 59 Mo. 422; Chesley v. Chesley, 49 Mo. 540; Montgomery v. Miller, 131 Mo. 595; Goode v. Comfort, 39 Mo. 313.

*Johnson & Lucas* for respondent.

(1) The court found that there was delivery of the

deed, that it was unrecorded, and that defendants knew of the same, and there was ample evidence to sustain this finding.    Sneather v. Sneather, 104 Mo. 209; Kane v. McCown, 55 Mo. 198; McReynolds v. Grubb, 150 Mo. 362; Kuh v. Garvin, 125 Mo. 560; Kingman v. Cornell, 150 Mo. 307; Standifer v. Standifer, 97 Mo. 241; Crowdie v. Searcy, 103 Mo. 118; Rumsey v. Otis, 133 Mo. 96; Appleman v. Appleman, 140 Mo. 313; Grant v. Ward, 52 S. W. 1028; Shoptow v. Ridgeway, 60 S. W. 723; Williams v. Smith, 60 S. W. 940; Smith v. May, 50 Atl. 59; Bunnell v. Bunnell, 64 S. W. 800.    (2)    Proof of actual knowledge of former deed is unnecessary. Maupen v. Emmons, 47 Mo. 307; Abbe v. Justice, 60 Mo. App. 308; Doyle v. Drey, 99 Mo. 466; Taaffee v. Kelley, 110 Mo. 136.    But in the case at bar it was made and the court so found.    (3)    Sutherland and La Rue, having assumed the payment of the Nesbit deed of trust, could not be heard to question its validity, and the appellants are in no better position than their vendors.    Mitchell v. Building Assn., 49 S. W. 626; Whyte v. St. Louis, 153 Mo. 80; Reynolds v. Kroff, 144 Mo. 433; White v. Murray, 145 Mo. 622; Dunway v. Day, 163 Mo. 415; Laidlaw v. Cottrell, 159 Mo. 318.

MARSHALL, J.—This is an action in ejectment to recover the western fifteen feet of lot number thirty, and the eastern three feet of lot number twenty-nine, in block one, of the amended plat of J. B. Daggett's second addition to city block 1804 of the city of St. Louis, containing eighteen feet on the north line of Lynch street by a depth northwardly of one hundred and fourteen feet, on which premises is located house number 2309 Lynch street.

The petition is in the usual form, and the ouster is laid as of October 1, 1899.

The answer is a general denial, coupled with the following special defenses:

First.    That on October 21, 1889, one Mattie J.

Sallee was the owner and entitled to the possession of the property, and that on said day she executed a deed of trust thereon to H. P. Faris, as trustee for the Brinkerhoff-Faris Trust and Savings Company, to secure an indebtedness of $1,458, which however was subject to a prior deed of trust made by the same parties to the same trustee and company; that default was made in the payment of the second deed of trust, it was duly foreclosed and the plaintiff, the Benton Land Company, became the purchaser and received a trustee's deed therefor; that on August 2, 1895, the Benton Land Company conveyed the land to Southerland and LaRue; that on November 30, 1896, Southerland and LaRue conveyed the land to Eleanore M. England, and that on November 30, 1897, Eleanore M. England conveyed the land to the defendant, Max Frolich, who has been in possession thereof since; that prior to the said foreclosure of said second deed of trust, the equity of redemption in said property had passed from Mattie J. Sallee to A. W. Nesbit, and that the same was cut out by said foreclosure, but that notwithstanding said Nesbit had thus lost all interest in the land, he executed on July 24, 1893, to H. P. Faris, as trustee for the Brinkerhoff-Faris Trust and Savings Company, two deeds of trust, one for fifteen thousand five hundred dollars, and the other for two thousand seven hundred and eighty-five dollars; that plaintiff's alleged right to the property is based upon and grows out of the second of said two deeds of trust, and that in consequence of all which the legal title is vested in the defendants and not in the plaintiff:

Second. That the said second deed of trust so made by said Nesbit, on July 24, 1893, was payable in certain named installments, and that the same was wholly without consideration and void; that said deed of trust covered one parcel on the east side of Indiana avenue consisting of seven lots with an aggregate frontage of 173 feet on Lynch street, on which there were thirteen dwell-

ing houses and one corner store, and also one parcel of ground on the west side of Indiana avenue consisting of five lots with an aggregate frontage of one hundred and forty feet and four inches, on which there were eight dwelling houses; that on February 15, 1898, at a time when there were no installments due on said deed of trust the trustee oppressively, illegally and fraudulently foreclosed said deed of trust, sold the property in bulk to the plaintiff for one hundred dollars when it would have sold for enough in parcels to have paid the debt, and that the sale was collusive between the trustee and the *cestui que trust,* and hence the deed to the plaintiff in pursuance to said sale conveyed no title.

The answer then closes with a prayer to be discharged with costs.

The reply admits that on October 31, 1889, Mattie J. Sallee was the owner and entitled to the possession of the premises, and that she executed the deed of trust for $1,458 set out in the answer, and that it was subject to a prior deed of trust for fifteen thousand dollars, which she had made to the same parties, and that the second deed of trust was foreclosed on June 29, 1892, and that the plaintiff became the purchaser at said sale; denies that A. W. Nesbit had no title when he executed his two deeds of trust on July 24, 1893, but alleges that Nesbit had title at that time, and avers that the first Nesbit deed of trust for $15,000, was given in lieu and substitution for the first deed of trust given by Mrs. Sallee; and denies that either of said Nesbit deeds of trust were without consideration, but avers that they represented an honest indebtedness; alleges the proper and regular foreclosure of the second Nesbit deed of trust and the purchase of the property by the plaintiff at the foreclosure sale, and then denies all the other allegations of the answer.

At the trial the following proceedings were had:

The plaintiff introduced a tripartite agreement between the Benton Land Company, of the first part, Max

Frolich and Eleanore M. England, of the second part, and Edward S. Fish, of the third part, whereby it was agreed that one ejectment suit should be brought against Charles F. Zeitler, to test the right of the plaintiff to all the lots in controversy and that the judgment had in that case should decide the right to all the lots, and that pending the litigation the third party, Fish, should collect the rents, pay the taxes and attend to the repairs of all the property, and the net balance should be turned over to whichever of the litigants was adjudged entitled to the land. The plaintiff then offered in evidence a stipulation between the parties hereto whereby it was agreed that Mattie J. Sallee was the original source of title and that she owned the property on October 31, 1889; that John C. England is the agent of Mrs. England; that the consideration that passed from Mrs. England to Southerland and LaRue was $1,500 in cash, and certain land in Arkansas which John C. England valued at $2,000; that Max Frolich holds the title for Mrs. England; that between February and May, 1897, John C. England paid the Brinkerhoff-Faris Trust and Savings Company interest on the two deeds of trust on the property amounting to $518.

The plaintiff then introduced in evidence a deed of trust from Mattie J. Sallee and husband to William E. Brinkerhoff and H. P. Faris, trustee for Brinkerhoff-Faris Trust and Savings Company, for fifteen thousand dollars, dated October 21, 1889, and duly recorded, and a second deed of trust of the same date from Mattie J. Sallee and husband to H. P. Faris, trustee for the same *cestui que trust,* for $1,458, which expressed that it was subject to the first deed of trust for $15,000, which was also duly recorded. The debt so secured was evidenced by seven notes, one for $550, due November 1, 1890, one for $518, due May 1, 1890, and five notes for $150 each due on May and November 1st respectively thereafter. The plaintiff then offered a deed from the trustee, H. P. Faris, to the Benton Land Company, dated June 28,

1892, foreclosing the second Sallee deed of trust aforesaid, for failure to pay the note for $550. The plaintiff then offered a quitclaim deed from the Benton Land Company to A. W. Nesbit, dated May 2, 1893, which was declared to be subject to the first Sallee deed of trust for fifteen thousand dollars. The deed was properly acknowledged, but was not recorded. The plaintiff then offered in evidence a deed of trust from A. W. Nesbit and wife to John H. Lucas and H. P. Faris, trustees for the Brinkerhoff-Faris Trust and Savings Company, dated July 25, 1893, for $15,000. This deed of trust recites that it is given and accepted in lieu and substitution of the fifteen thousand dollar deed of trust made by Mattie J. Sallee and husband to William E. Brinkerhoff and Herman P. Faris, trustees for the Brinkerhoff-Faris Trust & Savings Company, dated October 21, 1889. The debt so secured by said Nesbit deed of trust was evidenced by a bond payable in five annual installments of two thousand dollars each and five annual installments of one thousand dollars each. This deed of trust was properly executed and recorded. The plaintiff then introduced a deed of trust dated July 25, 1893, from A. W. Nesbit to H. P. Faris, trustees for Brinkerhoff-Faris Trust & Savings Company, to secure notes aggregating $2,785. This deed of trust was properly executed and recorded, and recites that it is given and accepted subject to the fifteen thousand dollar deed of trust from Nesbit to the same parties, and that it secures the debt which was secured by the second Sallee deed of trust for $1,458, and the interest thereon, together with the interest due on the first Sallee deed of trust for fifteen thousand dollars. The plaintiff then introduced a trustee's deed to the Benton Land Company, dated February 25, 1898, foreclosing the second Nesbit deed of trust last above described. This deed was properly executed and recorded.

Thereupon, the plaintiff rested.

The defendants demurred to the evidence, the court overruled the demurrer and the defendants excepted.

The defendants then introduced a general warranty deed from the Benton Land Company to Southerland and LaRue, dated August 2, 1895, which recited, however, that it was subject to the two Nesbit deeds of trust aforesaid, dated July 25, 1893, which were stated to be for $15,000 and $2,000 respectively, and which Southerland and LaRue assumed and agreed to pay as a part of the consideration for the deed to them. The defendants then introduced a general warranty deed from Southerland and LaRue to Eleanore M. England, dated November 30, 1896, wherein the consideration was recited to be $8,000, and wherein it was further recited that Southerland and LaRue agreed to warrant and defend against the lawful claims and demands of all persons whomsoever except as against the two Nesbit deeds of trust to the Brinkerhoff-Faris Trust and Savings Company aforesaid. The defendants also introduced a quitclaim deed from Mrs. England to Frolich, but as the parties stipulated that he holds simply for Mrs. England it is not necessary to describe that deed further. The defendants then offered a quitclaim deed from A. W. Nesbit to the Benton Land Company, dated November 1, 1893, which was duly executed and recorded, and which recited that it was the same property which the Benton Land Company had acquired by foreclosure of the Sallee second deed of trust, and that it was given to release any claim Nesbit had to the land arising from irregularity in the sale of the land. Thereupon the defendants rested.

In rebuttal the plaintiff introduced a contract, dated September 17, 1895, between Brinkerhoff-Faris Trust & Savings Company and Southerland and LaRue which recites the two Nesbit deeds of trust aforesaid and whereby it is stipulated that there is due on them only seventeen thousand dollars, and wherein it is recited that Southerland and LaRue agree to pay said amount,

the time for the payment of the fifteen thousand dollars being extended to September 1, 1899, and for the payment of the two thousand dollars, being extended from August 1, 1893, to September 1, 1896.    The. plaintiff also introduced various letters from John C. England to Brinkerhoff-Faris Trust & Savings Company, in which the existence of the two Nesbit deeds of trust are recognized, and negotiations are conducted looking to the payment or extension of time for the payment of them, and the payment of certain interest thereon is shown.    The plaintiff also called John C. England as a witness, who identified the letters aforesaid, and said he was acting as agent for Mrs. England when he wrote them, and when he purchased and managed the property; that when negotiating for the purchase of the property he had the use of an abstract of the title and discovered that there were difficulties about the title; that there was a deed of trust for $3,500 on the property, given by Nesbit, at least one attachment lien, and the two deeds of trust from Nesbit to the Brinkerhoff-Faris Trust & Savings Company, and that for these reasons the Lincoln Trust Company would not give a certificate of title; that he was informed that the property was worth twenty-five thousand dollars, and he estimated it to be worth eight thousand dollars over and above the seventeen thousand dollars evidenced by the two Nesbit deeds of trust and that he agreed to pay $8,000 therefor and to take a deed warranting the title against everything except the Nesbit deeds of trust; that Southerland and LaRue wanted him to take subject to the Nesbit deeds of trust, but he declined to do so, because he discovered from the records that Nesbit had no title at the time he executed the deeds of trust and therefore he did not believe the deeds of trust were valid; that he ascertained the existence of the Nesbit deeds of trust when he examined the records, and also saw on record the contract between the Brinkerhoff-Faris Trust and Savings Company and Southerland and LaRue aforesaid;

that he ascertained from the records that Southerland and LaRue were the owners of the property subject to the two Nesbit deeds of trust, aggregating seventeen thousand dollars; that he never saw or heard of the unrecorded deed from the Benton Land Company to Nesbit until the day of the trial.

The abstract of the record then recites that "the part of the answer presenting an equitable defense was postponed for subsequent trial."

The court made a special finding of the facts, which, however, does not appear to have been requested by either of the parties, but which states the facts to be substantially as hereinbefore set out, except that in addition thereto it finds the fact to be that John C. England had notice prior to the purchase by him for his wife, of the unrecorded quitclaim deed from the Benton Land Company to A. W. Nesbit dated May 2, 1893.

The circuit court entered judgment for the plaintiff for possession, for one hundred and six dollars damages, and assessed the monthly rental value at twelve dollars. Thereupon, the defendant demanded a trial upon its equitable defense. The court held that the matters pleaded constituted no defense, and refused to hear it; but set aside the judgment, took the case as submitted on the same evidence, made the same finding of facts, and entered the same judgment. No instructions other than the demurrer to the evidence at the close of the plaintiff's case, were asked or given. In due time the defendants filed a motion for a new trial, which in addition to the "usual errors" assigned in such motions, specifically set out that the court had erred in holding "as a matter of law" that the defendant, Mrs. England, or her agent, had actual notice of the unrecorded deed from the Benton Land Company to Nesbit, and that it also erred in holding that the "so-called" equitable defense constituted no defense to this action, and in refusing to hear any evidence under that defense. This motion being overruled, the defendants brought

the case to this court by a certificate of the judgment and the defendants have filed an abstract of the record in this court.

Upon this state of the record the defendants here set up two principal contentions, to-wit, first, that the unrecorded quitclaim deed from the Benton Land Company to A. W. Nesbit, dated May 2, 1893, is not shown to have been delivered to Nesbit, and, therefore, he acquired no title to the land thereby, and hence the two deeds of trust given by him to the Brinkerhoff-Faris Trust and Savings Company are invalid, and therefore the title to the land remained in the Benton Land Company, where it became vested by its purchase thereof under the second Sallee deed of trust, and consequently that title so acquired passed from the Benton Land Company to Southerland and LaRue and from them to Mrs. England, unaffected by the unrecorded quitclaim deed from the Benton Land Company to Nesbit, or the Nesbit deeds of trust or the quitclaim deed from Nesbit to the Benton Land Company subject to the two deeds of trust, or by the foreclosure of the second Nesbit deed of trust and the purchase thereat by the Benton Land Company, with the result that the legal title vested in the defendants, discharged of the Nesbit deeds of trust, and, therefore, the plaintiff is not entitled to recover; and, second, that the circuit court erred in holding that the second or equitable defense pleaded constituted no defense and in refusing to hear the evidence thereunder. In addition to which it is also said that the first Sallee deed of trust is such an outstanding legal title as precluded a recovery by the plaintiff, and as this would end the case, if well taken, it will be considered first.

## I.

The first question is whether a deed of trust is such an outstanding legal title as will defeat a recovery in an action in ejectment.

The question arises upon this record in this way: Mrs. Sallee owned the land. She executed two deeds of trust thereon, one for $15,000 to W. E. Brinkerhoff and H. P. Faris as trustees for the Brinkerhoff-Faris Trust and Savings Company, and the other for $1,458 to H. P. Faris as trustee for the Brinkerhoff-Faris Trust and Savings Company. Then Mrs. Sallee conveyed the land to A. W. Nesbit, subject to said two deeds of trust. The debt secured by the second deed of trust fell due, and was unpaid. The trustee foreclosed that deed of trust and the Benton Land Company, the plaintiff, became the purchaser at the foreclosure sale and received a trustee's deed to the land.

The contention then is that the Benton Land Company can not maintain ejectment against Mrs. Sallee or any one else, for the land, because in ejectment the plaintiff must recover upon a legal and not an equitable title, and upon the strength of his own title and not by reason of the weakness of the defendant's title, and that the plaintiff herein has not the legal title, but that the legal title is vested in W. E. Brinkerhoff and H. P. Faris by virtue of the first deed of trust for fifteen thousand dollars executed by Mrs. Sallee to them as trustees for the Brinkerhoff-Faris Trust and Savings Company.

Three complete answers are apparent to this contention, to-wit: First, the case was not tried in the circuit court upon any such theory, and no such issue was raised in that court and cases must be tried in this court upon the same theory and issues upon which they were tried in the lower court. [Trigg v. Taylor, 27 Mo. 245; Walker v. Owen, 79 Mo. 563; Tomlinson v. Ellison, 104 Mo. 105; Harper v. Morse, 114 Mo. 317; Minton v. Steele, 125 Mo. 181; Dice v. Hamilton, 178 Mo. 1. c. 90.] Second. It is not a fact that there is any such deed of trust existent. Mrs. Sallee made such a deed of trust. Then she conveyed all her right to the land to Nesbit. Then the second deed of trust from Mrs. Sallee to Faris, as trustee for the Brinkerhoff-Faris Trust and Savings

Company, was foreclosed, and the Benton Land Company became the purchaser. The Benton Land Company then made the unrecorded quitclaim deed to Nesbit, and he executed two deeds of trust upon the property, the first to John H. Lucas and H. P. Faris, as trustee for the Brinkerhoff-Faris Trust & Savings Company to secure $15,000, and the second to H. P. Faris as trustee for said Trust and Savings Company to secure $2,785. The first of these Nesbit deeds of trust recites that it was given and accepted in lieu of and substitution for the Sallee first deed of trust dated October 1, 1889, which conveyed the title to William E. Brinkerhoff and H. P. Faris as trustees for the Brinkerhoff-Faris Trust and Savings Company.

It admits of no doubt, therefore, that the acceptance of this deed of trust by the Brinkerhoff-Faris Trust and Savings Company from Nesbit, waived, discharged and released the Sallee first deed of trust aforesaid. So that the effect of this arrangement was to divest out of William E. Brinkerhoff and H. P. Faris whatever title had been vested in them by the Sallee first deed of trust. The Brinkerhoff-Faris Trust and Savings Company were the beneficiaries under the Sallee first deed of trust, and it was perfectly competent for that Company to waive the Sallee deed of trust by taking the Nesbit deed of trust in lieu and substitution therefor. Third: A deed of trust is not such an outstanding legal title as will before entry or foreclosure defeat a recovery in an action of ejectment.

Woods v. Hilderbrand, 46 Mo. 284, was a suit in ejectment by the purchaser of the land at a sheriff's sale under an execution against the defendant. At the trial the court permitted the defendant to show that after the plaintiff so purchased, he mortgaged the land; that the mortgage was overdue, but had not been foreclosed and possession had not been taken of the premises thereunder. The trial court held that the legal title was in the mortgagee, and hence was an outstanding legal title,

which the defendant could avail himself of. This court held this to be manifest error, saying: ''The ruling of the court upon the second point contradicts the long and well-settled doctrine as to the relation of the mortgagor and mortgagee before entry or foreclosure. 'The modern doctrine is well established, that a mortgage is but a security for the payment of the debt or the discharge of the engagement for which it was originally given; and until the mortgagee enters for breach of the conditions, and in many respects until final foreclosure of the mortgage, the mortgagor continues the owner of the estate, and has a right to lease, sell, and in every respect to deal with the mortgaged premises as the owner, so long as he is permitted to remain in possession.' [Kennett v. Plummer, 28 Mo. 145.] The case of Meyer v. Campbell, 12 Mo. 603, is relied upon as establishing the doctrine sustained by the court below, and such a position seems to be indicated by the court, though the question is not directly decided. The mortgagee himself, in possession after forfeiture, might doubtless set up his own title against that of the mortgagor (McCormick v. Fitzmorris, 39 Mo. 34), but, as against all the world besides, the mortgagor is the owner, and his title can not be defeated by showing that the property is pledged to a third person for the payment of a debt. [Hill on Mort., 162, sec. 15; Raynor v. Wilson, 6 Hill 469; Collins v. Torry, 7 Johns. 278; Jackson v. Pratt, 10 Id. 381; Den v. Dimon, 5 Halst. (N. J.) 156.] If it was the intention of the court in Meyer v. Campbell to hold a contrary view, it is not clearly expressed; and with the clear statement of the relation of the mortgagor and mortgagee in Kennett v. Plummer, and the universal holding in other States, we must unhesitatingly hold the doctrine in Missouri, as well as elsewhere, to be, that a defendant in ejectment can not set up a mortgage with which he is not connected as an outstanding title. The fact that ejectment may be brought in Missouri by the mortgagee, while it will not lie in New York, does

not invalidate the New York authorities upon the present question; for only the mortgagee himself may avail himself of his right, and it is of no consequence, so far as strangers are concerned, whether he have only the right to foreclose or the right of ejectment as well."

The converse of the proposition was decided in Johnson v. Houston, 47 Mo. 227. There the mortgagor brought ejectment against the assignee of the mortgagee, who had entered after condition broken, and it was held that she could not recover, this court saying: "But in a mortgage, or deed of trust in the nature of a mortgage, the legal title, after condition broken, passes to the mortgagee or trustee." And the case of Woods v. Hilderbrand, 46 Mo. 284, was cited and expressly approved, and the distinction between that case and the case under consideration was clearly drawn.

Woods v. Hilderbrand, supra, was cited with approval in Pease v. Pilot Knob Iron Co., 49 Mo. l. c. 128, and in that case it was aptly and tersely said: "In some of the States the mortgage with condition broken is held to so pass the title that it can not revert at law without a deed (Phelps v. Sage, 2 Day 151; Smith v. Vincent, 15 Conn. 13), and so in some of the other States. The old doctrine was that the title passed upon the delivery of the mortgage, and after default that the estate became absolute at law, and a reconveyance became necessary. But the great preponderance of modern authority establishes the rule that a mortgage, though a conveyance in fee upon the condition, is, even after condition broken and the legal title passes, merely a security for the debt, which security is extinguished and the title reinvests whenever the debt is paid. Chancellor KENT, speaking of payment after default, and in commenting upon the old doctrine says: 'I am persuaded that most of the courts of law in this country would not now tolerate a claim of title under a mortgage admitted or shown to have been fully and fairly satisfied by payment of the debt.' [4 Kent 194, notes b and p.]"

Woods v. Hilderbrand, supra, was also cited and followed in Jackson v. Magruder, 51 Mo. 1. c. 59, where it was said: "A plaintiff in ejectment can recover only on the strength of his legal title. His claim of title must be perfect to authorize a recovery. The defendant in possession occupies a different position. In most instances he may protect himself by an outstanding title. If, however, he is a mere stranger to a mortgagee, or a trespasser without color of title, he ought not to be allowed to set up a forfeited mortgage to prevent a recovery by the mortgagor or the person holding the equity of redemption."

Hardwick v. Jones, 65 Mo. 54, was an action in ejectment by the grantee of the purchasers of the property at an execution sale thereof by the sheriff, against the purchaser of the property at a sale thereof by the assignee in bankruptcy of the original owner of the property. The defendants set up an outstanding deed of trust made by the common source of title, wherein the condition was broken. It was held not to constitute an outstanding title, this court saying: "Appellants contend that plaintiff was not entitled to a judgment, because there was an outstanding deed of trust on the land, and at the date of the trial the debt which it was executed to secure was due and unpaid. A mortgagee, or trustee, or one claiming under him, could make that defense, but not a stranger to the mortgage, holding adversely both to the mortgagor and mortgagee. This has so often been decided by this court that it has ceased to be an open question." And Woods v. Hilderbrand and Johnson v. Houston, supra, were cited and approved.

Woods v. Hilderbrand was cited approvingly in Masterson v. Railroad, 72 Mo. 1. c. 347, and it was there said: "A mortgage, in this State, is a mere security for the debt, and notwithstanding the legal title is nominally in the mortgagee, the mortgagor is still considered the owner and entitled to the possession until default."

The antithesis of the condition is shown by the case

of Lanier v. McIntosh, 117 Mo. 508, where the tenant of the mortgagor in possession was sued in ejectment by the purchaser at a foreclosure sale under the mortgage, and he sought to defend on the ground that the landlord had an equity of redemption in the land even after foreclosure. Woods v. Hilderbrand was cited and approved, and it was said: "A mere right of redemption in a third person, after foreclosure, is not such an outstanding title as will defeat a recovery in ejectment. The title 'must be such a one as the owner of the title himself could recover on if he were asserting it in an action. It must be a present, subsisting and operative title.'"

Hutchinson v. Shelley, 133 Mo. 400, was an action in ejectment by a devisee against the purchaser in possession under a void administrator's sale. The defendant pleaded an outstanding deed of trust, under which there had been no entry or foreclosure, although there was a condition broken. It was held to be no defense. This court, per GANTT, J., saying: "Granting that Mrs. Dudgeon still has her lien, and it would appear that she has, she is not a party to this record and as neither Quinn" (who also had held a deed of trust on the land which it was claimed had been released by mistake) "nor defendant had paid any part of said lien, she is free to enforce it without any assistance from them and her claim is no bar to plaintiff's recovery from defendant."

Thus it appears that the previous adjudications in this State clearly hold that an outstanding mortgage or deed of trust, where there has been no entry or foreclosure, although the condition has been broken, is not a bar to a recovery in ejectment as between persons who do not claim under such mortgage or deed of trust, but that the right to the possession under such instruments enures only to the mortgagee or trustee. Of course where there has been a foreclosure of the mortgage or deed of trust and the legal title has been transmitted to a

purchaser at such foreclosure sale, such a title in such a purchaser constitutes an outstanding legal title and will defeat an ejectment even between third persons.   And the reason is plain.   Originally a mortgage conveyed the title to the land to the mortgagee, to be defeated, however, upon the payment of the debt.   If the debt was not paid at maturity, it was said there was a breach of the condition, and the title became absolute in the mortgagee without further action on the part of any one. The harshness of this rule became apparent, and courts of conscience relieved against it by holding that the purpose of the mortgage was to secure the payment of the debt, and that when the debt was paid the debtor should be satisfied, and hence notwithstanding the terms of the mortgage the debtor still had, in good conscience an interest in the land, which, for want of a better term, was called an "equity of redemption," that is, a right to pay off the debt, even after condition broken, in a reasonable time.   [Boone on Mortgages, sec. 2, and cas. cit.; 1 Coote's Law of Mortgages (5 Ed.), p. 14, et seq.; Herman on Mortgages of Real Estate, sec. 112, et seq.; 1 Jones on Mortgages (5 Ed.), secs. 6, 7, 8, 9, 10, 11, et seq.]

Herman on Mortgages says: "It is as well settled at law as it is in equity, that a mortgage is a mere security; and that as long as a security was intended, no matter what form the contract assumed, it remained a security until satisfied in some of the various modes applicable thereto." [Sec. 112.]   "Whenever a transaction resolves itself into a security, it is a mortgage— and this, whether it is a security either for an antecedent debt, or for advances made at the time, and entitles the debtor to a release of his property on payment of the debt.   This right of redemption or release is not only independent of the agreement, but paramount to it, and may be enforced without regard to the form of conveyance, and even in opposition to its terms." [Sec. 120.] "It is an established doctrine that an equity of redemp-

tion is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security, the borrower has a right to redeem the property upon the payment of the loan. This right can not be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage.'' [Sec. 121.]

By reason of this manifestly equitable doctrine, the harshness and rigor of the old common law mortgages was eliminated. Then mortgages with power, and duty of sale, and later deeds of trust, were adopted. By their terms the legal title is vested in the mortgagee or trustee. But notwithstanding such language of such instruments, the law regards the legal title as so vested in the mortgagee or trustee, only and solely for the purposes of security. If the debt is not paid at maturity the mortgagee or trustee is entitled to take possession of the property. Not, however, as the legal owner thereof, but solely for the purposes of security. After obtaining possession it is the duty of the mortgagee or trustee to collect the rents and profits and apply them to the payment of the debt secured and when the debt is thus paid, the mortgage or deed of trust becomes satisfied and the conveyance becomes *functus officio*, and the title reverts to the mortgagor without any conveyance from the mortgagee or trustee, and it is their duty to satisfy the mortgage or deed of trust on the records and to surrender the possession to the mortgagor or his grantees, assigns or legal representatives as the case may be. Or instead of so remaining in possession and applying the rents and profits, it is the privilege of the mortgagee and the duty of the trustee if requested by the *cestui que trust*, to foreclose the mortgage or the deed of trust and thus realize on the security and apply the proceeds on the debt secured, and the purchaser at the foreclosure sale becomes vested with the legal title as against the mortgagor and all who claim under him.

This being the law as to the mortgagor and the mortgagee, it becomes necessary in this case to consider

what sort of an estate or right thus remains in the mortgagor, and what is the true meaning of the term equity of redemption, whether the estate in the mortgagor so denominated is a legal estate, such as may be the subject of grant and within the rule as to ejectment, or whether it is simply an equitable interest, a mere right to redeem, which could be enforced only in a court of equity.

Perry on Trusts (5 Ed.), vol. 2, secs. 602i. and 602j., thus states the law on this subject:

"Sec. 602i.   The mortgagee in a deed of mortgage and the trustee in a deed of trust take the *legal* title and estate for the purposes of their security.   In all cases the legal title is in the trustee under the trust-deed, if the deed purports to convey the estate.   Such a title, however, is defeasible upon the performance by the grantor of the obligations undertaken by him.   Performance of the conditions of the deed on the part of the grantor, or tender of performance before the sale, will defeat the power of sale in a mortgage or deed of trust. Such performance or tender extinguishes the power; and a sale afterwards under the power, even to an innocent purchaser, will be void.

"Sec. 602j.   In law, a mortgage is considered, as between the mortgagor and mortgagee, and so far as it is necessary to give full effect to the mortgage as a security for the performance of the condition, as a conveyance in fee.   But for all other purposes it is considered, especially until entry for condition broken, as a mere charge or encumbrance, which does not divest the estate of the mortgagor.   He is deemed seized so far that he can convey it subject to the mortgage; he may make a second mortgage; it may be attached for his debts; he is considered as having all the rights and powers of the owner, except so far as it is necessary to hold otherwise in order to give effect to the mortgage. The interest of a mortgagor is therefore regarded as an estate; though, in legal strictness and as against the

mortgagee, it is an equity of redemption. It may be levied upon and seizin delivered by the officer; in which case the creditor will hold in fee subject to the mortgage. The same principles apply to the rights and title of the grantor in deeds of trust.''

The question of tender is not involved in this case and therefore what the learned author says in section 602i. on that subject is not quoted as affecting the law in this State on that subject.

In the note to the text the publisher of the edition quoted from, John M. Gould, states that ''the text states the rule prevailing in the majority of the States,'' and cites White v. Whitney, 3 Met. 81; Harrison v. Battle, 1 Dev. Eq. 541; Pool v. Glover, 2 Ired. L. 129; Anderson v. Holloman, 1 Jones Law 169; McGregor v. Hall, 3 Stew. & Per. 397; 4 Kent 160, 161, 195n.

Chancellor KENT, states the rule as follows: ''The equity doctrine is, that the mortgage is a mere security for the debt, and only a chattel interest, and that until a decree of foreclosure, the mortgagor continues the real owner of the fee. The equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. The courts of law have, also, by a gradual and most insensible progress, adopted these equitable views of the subject, which are founded in justice, and accord with the true intent and inherent nature of every such transaction. Except as against the mortgagee, the mortgagor, while in possession, and before foreclosure, is regarded as the real owner, and a freeholder, with the civil and political rights belonging to that character; whereas the mortgagee, notwithstanding the form of the conveyance, has only a chattel interest, and his mortgage is a mere security for a debt. This is the conclusion to be drawn from a view of the English and American authorities. The equity of re-

demption is not liable, under the English law, to sale on execution as real estate. It is held to be equitable assets, and is marshalled according to equity principles. But, in this country, the rule has very extensively prevailed, that an equity of redemption was vendible as real property on an execution at law; and it is also chargeable with the dower of the wife of the mortgagor. On the other hand, the estate of the mortgagee before foreclosure, or at least before entry, is not the subject of execution, not even though there has been a default, and the condition of the mortgage forfeited. The English policy led to an early adoption of these just and reasonable views of the character of the mortgagor; and it was settled in the reign of Charles II., that the executor, and not the heir of the mortgagee in fee, was entitled to the mortgage money, for, as Lord Nottingham observed, the money first came from the personal estate, and the mortgagee's right to the land was only as a security for the money. By the statute of 7 and 8 William III., mortgagors in possession were allowed to vote for members of Parliament." [4 Kent's Com. (14 Ed), marg. p. 160.]

Jones on Mortgages (5 Ed.), vol. 1, page 644, sec. 699, says: "The mortgagee is not in a general sense the owner of the mortgaged estate, although, as already noticed, under the common law doctrine he holds the legal title to the estate. Before foreclosure he can be regarded as the owner only in a very limited sense. . . . For some purposes he may be regarded as the owner after he has taken possession; but before he has taken possession it seems that there is no sense in which he could be so regarded, unless it be with reference to a proceeding to enforce his rights as mortgagee." And in section 700 the author says, "A mortgage before foreclosure is completed is personal assets, and upon the death of the mortgagee vests in his executor or administrator. The mortgage can be transferred, released, or foreclosed, only by the executor or administrator. A

quitclaim deed by the heir at law passes no title whatever in the premises."

Jones on Mortgages (5 Ed.), vol. 1, p. 665, sec. 719, says: "After the maturity of the mortgage, a mortgagee, without foreclosure or sale, may maintain ejectment against the mortgagor, without giving him previous notice. A second mortgagee may maintain the action, although there be an outstanding first mortgage still unsatisfied. The first mortgagee is regarded as holding the legal title only for the purpose of enforcing payment of the debt."

Jones on Mortgages (5 Ed.), vol. 1, sec. 665, states the law to be that the mortgagor's equity of redemption may be seized upon execution by a third person, and sold subject to the mortgage. And in section 666 the author points out that the widow of the mortgagor is entitled to dower in the equity of redemption, even though she joined in the mortgage.

The Am. and Eng. Enc. Law (2 Ed.), vol. 10, p. 506, thus states the law upon the subject: "Also it has been held that a mortgage, though in form a conveyance of the legal estate, is in substance only a pledge of the land of a mortgaged debt, and the mortgagee is to be regarded as holding the legal title only for the purpose of enforcing payment of the debt, and hence a second mortgagee can maintain ejectment against the mortgagor although there is an outstanding unsatisfied prior mortgage, and it makes no difference if the prior mortgage was expressly excepted from the encumbrances convenanted against in the second mortgage."

As against this great and overwhelming weight of authority reference is made to the case of Howard v. Thornton, 50 Mo. 291, wherein ADAMS, J., said: "But a mortgage after forfeiture constitutes a good outstanding title." This was an action in ejectment. J. T. Thornton was the common source of title. The plaintiff claimed under a sheriff's deed to the land that had been sold under execution against Thornton. The de-

fendant claimed under a subsequent deed from said J. T. Thornton, and also under a prior deed of trust which had been foreclosed, but the trustee had acted by an attorney in fact and not in person, and hence the sale was held to be void. (In this respect that case is overruled by Schanewerk v. Hoberecht, 117 Mo. 22). It was in such a case that the learned judge delivered the opinion and made the remark quoted above. What was there held with reference to the sale by the trustee has been since overruled, though not expressly, in Schanewerk v. Hoberecht, supra, and as it is perfectly clear that the doctrine asserted in the remark quoted is not in harmony with the prior or subsequent adjudications of this court upon that question, that much is here expressly overruled upon that proposition also. The learned judge evidently meant to say in that case that after foreclosure the mortgage constituted a good outstanding title, and inadvertently used the word forfeiture when he meant forclosure. Otherwise he would not have said in Boyd v. Jones, 49 Mo. 202, that a mortgagor in possession could not defeat a recovery in ejectment by a purchaser of his equity of redemption at an execution sale by a sheriff upon a judgment against the mortgagor, by showing an outstanding deed of trust, wherein the condition had been broken but there had been no entry or foreclosure when the suit was brought.

It is said, however, that a contrary doctrine to that here announced is decided in Schanewerk v. Hoberecht, 117 Mo. 22, and that the rule laid down in that case has since been followed in Lanier v. McIntosh, 117 Mo. 508; Springfield Engine, etc., Co. v. Donovan, 120 Mo. 423; Kennedy v. Siemers, 120 Mo. 73; Biffle v. Pullam, 125 Mo. 108; Snyder v. Railroad, 131 Mo. 568; Hume v. Hopkins, 140 Mo. 65; Keet v. Baker, 141 Mo. 175; Building & Inv. Co. v. Dunsworth, 146 Mo. 361; and Markwell v. Markwell, 157 Mo. 326. An examination of these cases will show that the question of whether

an outstanding mortgage or deed of trust, after condition broken, but before entry or foreclosure, could be set up to defeat an ejectment suit, by the holder of a second mortgage, or by a purchaser under execution, against the mortgagor was not involved and was not decided.

In Schanewerk v. Hoberecht there was but one deed of trust, but there were two foreclosures thereunder. The purchaser at the first foreclosure sale brought ejectment against the mortgagor in possession, and he defended on the ground that the first foreclosure sale under which the plaintiff claimed was void, but asserted that the second foreclosure of the deed of trust at which a third person acquired title was valid and hence there was an outstanding legal title which was better than the plaintiff's. Manifestly this is no authority in this case, for there had been two foreclosures of the deed of trust and the legal title was in one or the other of the purchasers at such foreclosure sales, while here there has been no entry or foreclosure under the deed of trust, and while the legal title is nominally in the trustee for the purposes of the security, it is in the plaintiff in this case as the grantee of the mortgagor under the second deed of trust, for all other purposes.

Markwell v. Markwell, 157 Mo. 326, was a bill in equity to set aside a sale by a trustee under a deed of trust. Building & Inv. Co. v. Dunsworth, 146 Mo. 361, was a contest between two purchasers at two different foreclosure sales under the same deed of trust. Keet v. Baker, 141 Mo. 175, was a contest between the plaintiff, a purchaser at a foreclosure sale under a deed of trust, and the defendant, a purchaser at an execution sale against the grantee of the equity of redemption. Or, in other words, practically between the purchaser at a foreclosure sale under a mortgage and the mortgagor. Hume v. Hopkins, 140 Mo. 65, was a contest between the purchaser at a foreclosure sale under a deed of trust

and the grantee of the equity of redemption, who claimed the foreclosure sale was void. Snyder v. Railroad, 131 Mo. 568, was the same kind of a controversy. Biffle v. Pullam, 125 Mo. 108, was an ejectment by the purchaser at a foreclosure sale under a deed of trust made by the defendant, against the mortgagor in possession. The defense was that the foreclosure was void. Kennedy v. Siemers, 120 Mo. 73, was a bill in equity by a purchaser of the equity of redemption for leave to redeem the land after it had been sold under a deed of trust. Springfield Eng., etc., Co. v. Donovan, 120 Mo. 423, was an ejectment by the purchaser at a foreclosure sale under a deed of trust against the mortgagor. The defense was that the foreclosure was void. Lanier v. McIntosh, 117 Mo. 508, was practically a contest between the purchaser at a foreclosure sale under a deed of trust and the mortgagor. The defense was that the foreclosure was void, and an offer to redeem.

It thus appears that none of these cases afford any basis for the contention that they are decisive of or even analogous to the case at bar.

It is, therefore, inexorably the rule of law in this State and generally, that an outstanding mortgage or deed of trust with condition broken, but under which there has been no entry or foreclosure, does not constitute such an outstanding title as will defeat an action of ejectment by the holder of a second mortgage or a purchaser thereunder, or by a purchaser of the equity of redemption under an execution sale against the mortgagor or any one holding under him. Of course after entry or foreclosure under the first mortgage the mortgagor and all others holding under the mortgagor, except the first mortgagee or trustee, will be cut out.

It follows, therefore, that neither the Sallee first mortgage nor the Nesbit first mortgage constitutes an outstanding title such as will defeat the plaintiff's recovery in this case.

## II.

The defendant next contends that there is no evidence that the unrecorded quitclaim deed from the Benton Land Company to Nesbit was ever delivered, and, therefore, it is contended. that both of the Nesbit deeds of trust are void, and hence the plaintiff acquired no title by the foreclosure of the second Nesbit deed of trust. In this way the defendant seeks to derive title from the plaintiff by virtue of the plaintiff's title obtained from the foreclosure of the Sallee second deed of trust.

It will be remembered that after the plaintiff acquired title by the foreclosure of the Sallee second deed of trust, the plaintiff conveyed the land to Nesbit, but the deed was not recorded, and Nesbit executed two deeds of trust to the Brinkerhoff-Faris Trust and Savings Company, and then Nesbit quitclaimed the land,. subject to the two deeds of trust, to the plaintiff, and. the plaintiff conveyed the land to Southerland and La Rue subject to the two Nesbit deeds of trust, which the grantees assumed to pay as a part of the purchase price, and then Southerland and La Rue conveyed the land to the defendant and warranted the title against everything except the two Nesbit deeds of trust, and that the amount of those deeds of trust, $17,000, was deducted. from the purchase price which defendant agreed to pay,. $25,000, and the defendant only paid the difference, and then the second Nesbit deed of trust was foreclosed and the plaintiff again became the purchaser.

Now the purpose of the defendants is to cut out the two Nesbit deeds of trust, and the title of the plaintiff acquired at the foreclosure of the second Nesbit deed of trust, and to relate their title back to the title acquired by the plaintiff by the foreclosure of the second Sallee deed of trust. If this can be done the defendant will have a clear title to the land, which it is conceded is worth $25,000, and will have paid therefor only $1,500

in cash, and land in Arkansas which they say is worth only $2,000. For, as above shown, the first Sallee deed of trust for $15,000 to the Brinkerhoff-Faris Trust and Savings Company, has been waived and abandoned by the trust company accepting the first Nesbit deed of trust, and the trust company can not be heard to say that Nesbit had no title, and if the defendants can cut out the Nesbit title and relate back to the title acquired by the plaintiff at the foreclosure sale under the Sallee second deed of trust, and if the Sallee first deed of trust is thus released, the defendants will have a clear title to the land. Whatever else may be said of it "the game is worth the candle."

Of course the defendants can not claim that they did not have notice of the Nesbit deeds of trust, for the deed from Southerland and La Rue to them expressly refers to them, and in addition Mrs. English's agent says he examined the records and found them.

The defendants' whole contention was, therefore, built upon the proposition that the quitclaim deed from the plaintiff to Nesbit was not recorded and that the defendants had no actual notice of it. The trial court found as a fact that Mrs. English's agent had actual notice of that deed. The defendants' motion for a new trial assigns as error that the trial court erred in holding that as a matter of law Mrs. English had notice of that deed, when the record shows that the trial court found as a fact and not as a matter of law that Mrs. English had notice of that deed, and counsel for plaintiff strenuously insist that the evidence adduced at the trial fully sustains the finding of fact by the trial court, that Mrs. English had such notice. Now in this court, the defendants do not lay so much stress upon the question of their notice of that deed, as they do upon the proposition that there is no evidence that the deed was ever delivered, and that as the deed was never recorded, no presumption of delivery can be indulged.

Two complete answers to this contention are appar-

ent in this case, first, there was no issue as to the delivery of that deed tendered or tried in the circuit court; and, second, the fact that the conveyance was beneficial to Nesbit and the fact that thereafter Nesbit dealt with the property as owner by giving two deeds of trust upon it and then conveying the equity of redemption to the plaintiff, are facts of such moment and consequence as warrant any court in drawing the inference of fact that the deed in question was delivered. And if that deed wa., delivered, then the title that the plaintiff acquired at the foreclosure sale under the Sallee second deed of trust passed to Nesbit; he incumbered it with two deeds of trust, and then conveyed the equity of redemption subject to the deeds of trust to the plaintiff, and the plaintiff conveyed to Southerland and LaRue subject to the Nesbit deeds of trust, which they assumed, and Southerland and La Rue conveyed to Mrs. English and that conveyance was subject to the Nesbit deed of trust. Southerland and La Rue could not be heard to say that Nesbit had no title and hence the deeds of trust were void, because they expressly assumed them, and therefore gave them validity, so far as they are concerned, even if they were void before that. Mrs. English did not assume them, but took subject to them. She can show that they are void, because she is not estopped from so doing. She does not attempt to show that the deeds are void except by showing that Nesbit had no title and hence could not incumber the land. She attempts to show that Nesbit has no title by saying there is no evidence that the quit-claim deed from the plaintiff to him was ever delivered. This is, however, insufficient, for, as above shown, there is evidence of facts from which the fact of delivery may legitimately be inferred.

The result is, the delivery of the deed to Nesbit is shown or legally inferred, the Nesbit deeds of trust are not attacked otherwise, the defendants had notice of the Nesbit deeds of trust and took subject to them in law,

though not by contract, and the consequence is the contention of the defendants that they can cut back of the Nesbit title and claim from the plaintiff under the foreclosure of the Sallee second deed of trust, can not be maintained.

## III.

The defendants claim that the trial court erred in holding that their second or equitable defense was insufficient and in refusing to hear evidence upon that defense.

The abstract of the record shows that the trial of the equitable defense was postponed to a future time, and that after the court made the finding of facts and entered a judgment, the defendants demanded a trial on the equitable defense. The court held that the equitable defense was insufficient, but set aside the judgment and took the case as submitted on the same evidence and entered a new judgment.

The equitable defense is, that there was no installment due under the Nesbit second deed of trust when the trustee sold the property, and that it was sold in bulk instead of in parcels. The evidence shows that the principal note secured by the Nesbit second deed of trust, was to mature on August 1, 1903, but that by the agreement between the Brinkerhoff-Faris Trust and Savings Company and Southerland and La Rue, which was duly recorded, it was agreed that this note should mature on September 1, 1896, instead of August 1, 1903, and defendants took with notice of this agreement because it was in their chain of title, and because Mrs. English's agent had actual knowledge of it before she purchased. The foreclosure of this deed of trust was on February 25, 1898. The debt was then past due. There is, therefore, no merit in this contention.

The whole of the Nesbit second deed of trust is not reproduced in the abstract of the record, furnished by

the defendants, and, therefore, it can not be ascertained whether there was anything in that instrument which required the trustee to sell in parcels and prohibited his selling in bulk.   In the absence of such an allegation and showing, the mere fact that the property was sold in bulk will not vitiate the sale.   [Dunn v. McCoy, 150 Mo. l. c. 567, citing Benkendorf v. Vincenz, 52 Mo. 441; Chesley v. Chesley, 54 Mo. 347; Million v. McRee, 9 Mo. App. 344.]   Especially is this true where, as here, the defendant does not even offer to redeem and does not ask any equitable relief, but simply interposes this as a defense in an action in ejectment.

The judgment of the circuit court is right and it is affirmed.   *Robinson, C. J., Gantt, Burgess* and *Fox, JJ.*, concur; *Brace* and *Valliant, JJ.*, dissent.