**W. L. McCRORY, Plaintiff-Appellant,**

**v.**

**Paul MONROE and C. O. Holmes, Defendants-Respondents.**

**W. L. McCRORY, Plaintiff-Respondent,**

**v.**

**Paul MONROE, Defendant-Appellant,**

**and**

**C. O. Holmes, Defendant-Respondent.**

**Nos. 7818, 7819.**

Springfield Court of Appeals.

Missouri.

May 23, 1960.

Byron Kearby and Edward E. Calvin, Poplar Bluff, for appellant W. L. McCrory.

Henson & Henson, Poplar Bluff, for respondents Paul Monroe and C. O. Holmes.

McDOWELL, Judge.

Plaintiff, W. L. McCrory, brought this action in replevin against defendants, Paul Monroe and C. O. Holmes, to recover possession of cattle. The cause was tried by the court, jury having been waived, and judgment rendered for plaintiff on the petition and on count one of the cross-claim and for defendants on count two of the cross-claim in the sum of $500.50, damages to growing crops.

The replevin petition was in regular form. The joint answer of defendants was a general denial and counterclaim in two counts.

Count I was for damages sustained by defendant, Monroe, for one-half mile of woven wire fence alleged to have been torn down and removed by plaintiff.

Count II was for $1,500 damages to growing crops alleged to have been sustained by defendants, jointly, from negligence of plaintiff in allowing his cattle to enter defendants' land injuring and destroying their growing crops.

The reply was a general denial.

Plaintiff appealed from a judgment in favor of defendants on count II, (case No. 7818), and, defendant, Monroe, appealed from the judgment in favor of plaintiff on

count I, (case No. 7819). These appeals are consolidated for opinion of this court.

Plaintiff and defendant, Monroe, are adjoining landowners in Butler County, Missouri. Their lands are separated by a mile long partition fence running east and west. It was built in 1950 by a former owner of the Monroe tract. The owners, after suit, agreed that plaintiff build and maintain the east one-half of the fence and that defendant, Monroe, take the west half. The fence was made of woven wire with one bark wire at the top. Just prior to defendant's moving on the farm, plaintiff removed the wire from the posts, which had rotted off, laid it on the ground, and made new posts and distributed them along the fence line in preparation for rebuilding.

The evidence is that there was a question as to the dividing line between the farms and it was agreed that the county surveyor survey the line before rebuilding the fence. Defendant says that the fence has been down two years and nothing has been done by plaintiff. He admits it was satisfactory with him for plaintiff to build the east half of the fence and to have the dividing line surveyed. He stated that plaintiff was to see the surveyor but had not done so. We think the evidence shows that the east half of the dividing fence was on the ground; that the posts had rotted off, and that all plaintiff did was to take the posts off the wire and lay the wire out on the line.

C. O. Holmes testified that on May 1st plaintiff's cattle got on 15 acres of their wheat, which was in full bloom, and ate and destroyed about 1½ acres; that the wheat threshed made about 30 bushels per acre and that at the time was selling at $1.90 per bushel.

He testified that the same cattle were on defendants' land June 26,. 1957; that he counted 30 head. He gave this answer: "Yes, sir, they was in our rye and vetch and in our rye and on ten acres of beans and on five acres of wheat. We lacked five acres of getting our wheat threshed." He testified the wheat would have made 30 bushels per acre; that the cattle just "tromped around through it." He testified that he threshed it and got 100 bushels; that about 50 bushels were destroyed.

He said the cattle were on 10 acres of rye and vetch; that it would have made 1,000 pounds per acre; that the cattle "was around tromping around over all of it". That it was bringing .08 cents per pound.

He said the cattle got on 25 acres of rye which would have yielded 20 bushels per acre; that the market price was .90 cents per bushel; that after the cattle were on it he was unable to harvest any of it.

He said they had 10 acres of growing beans, which the cattle ate and ruined, and they had to be planted over; that the beans would have made 30 bushels per acre and at the time he threshed them the market price was $2.05 per bushel.

Witness testified that about 30 head of plaintiff's cattle got in their crops June 30th; that while he was notifying plaintiff the rest of the cattle came back in the field; and they put 17 head in the lot; 14 head were put up June 30th and three more June 26th; that these were the cattle replevied. He stated that on this occasion the cattle got on the 10 acres of rye and vetch and the beans that had been replanted after June 26th. Witness said he fed the cattle while they were in the lot, 1500 pounds of hay worth $20 per ton. There was evidence that defendants had notified plaintiff about his cattle getting in the crops; that plaintiff offered to pay damages and agreed that they select someone to assess the same but nothing was ever done about it.

Defendant testified that plaintiff's cattle got on their land August 1st; that they were in some milo-maize, which would have produced 2,000 pounds per acre, and damaged about one-half acre; that at that time milo-maize was bringing .90 cents per bushel.

Witness said that on August 21st there were 52 head of plaintiff's cattle on the farm; that they were in corn and 10 acres of beans, that were planted over. Witness said the beans were in full bloom and the cattle ate and broke them down; that three acres had practically nothing on them and all of them made only 50 bushels. He said the beans would have made 20 bushels per acre, and at the time they were planted or threshed, they would have brought $2.00 per bushel.

There was evidence that 1957 was a very wet year, etc., and that plaintiff knew that the fence was down between the lands and had actual knowledge that his cattle had been on defendants' crops, but we think we have stated such part of the evidence necessary for a decision of the issues presented.

In appeal case No. 7818, defendants recovered a judgment of $500.50 damages to growing crops resulting from the negligence of plaintiff in permitting his cattle on divers occasions to enter upon the Monroe farm, operated by defendant, C. O. Holmes, and eat and destroy growing crops, including wheat, beans, corn, rye and vetch. The prayer of the petition was for $1,500 damages.

■ There was no request of the court to make a finding of facts and conclusions of law and the judgment of the court must be sustained if supported by the evidence. Section 510.310, subd. 2 RSMo 1949, V.A.M.S.; Tillery v. Crook, Mo.App., 297 S.W.2d 9, 12; Townsend v. Lawrence, Mo.App., 267 S.W.2d 489, 491 [2].

Under point III of appellant's brief, error is assigned that the judgment is not supported by competent evidence. With this contention we agree.

■ In Beaty v. N. W. Electric Power Cooperative, Inc., Mo.App., 296 S.W.2d 921, 924 [1, 2], the law is stated: "The measure of damages to a growing crop is well stated in Happy v. Kenton, 362 Mo.

1156, 1157, 247 S.W.2d 698, 704, where it is said: '* * * we think there can be no question but that the measure of damage for injury to or destruction of a growing annual crop is, in the case of total destruction: the value of the crop at the time and place of destruction; and as to injury or partial destruction: the difference between the value of the crop immediately before and immediately after the injury. * * * However, to determine the value of a growing annual crop at the time and place of destruction or its value immediately before and immediately after any injury, we have approved a method to ascertain the amount of damages. This, by a consideration of evidence showing the maturity value of the probable crop but for destruction or injury, and by a deduction therefrom of the value of the labor and the expense which, subsequent to its injury or destruction and but for it, would have been required to mature, care for, and market the crop.' See also: Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, 294, and Welker v. Pankey, Mo.App., 225 S.W.2d 505, 508." Morrill v. Alexander, Mo.App., 215 S.W. 764; Miller v. Sabinske, Mo.App., 322 S.W.2d 941, 948, [9, 10]; Moore v. St. Louis Southwestern Railway Co., Mo.App., 301 S.W.2d 395, 403 [11, 12].

■ The evidence offered by defendants fails to follow the required rule for the determination of damages to growing crops, either partially or totally destroyed. Cause No. 7818, for that reason, must be reversed and remanded for a new trial. The defendants might submit additional evidence as to damages sustained and make a submissible case. Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401, 404 [10, 11].

We deem it unnecessary to pass on the other assignments of error in case No. 7818.

In appeal case numbered 7819, there is but one alleged error presented for judgment, to-wit: "The Court erred in finding for the respondent W. L. McCrory on Count I of appellant's counterclaim since

all the evidence was that respondent W. L. McCrory removed the fence of appellant without his permission."

In this action, counterclaim No. 1, defendant, Monroe, seeks to recover the value of one-half mile of woven wire fence alleged to have been torn down and moved by plaintiff without defendant's consent. The judgment of the trial court was for the plaintiff.

To sustain the alleged error, defendant, Monroe, cites § 537.350 RSMo 1949, V.A.M.S., which provides: "If any person shall voluntarily throw down or open any * * * fences, and leave the same open or down, other than those that lead into his own enclosure, or shall voluntarily throw down, open or remove any partition fence, without giving six months' written notice to the person owning the adjoining fields, if they are cultivated lands, he shall pay to the party injured the sum of five dollars, and double the amount of damages he shall sustain by reason of such * * * fences having been thrown down or opened, with costs; * * *"

Defendant also cites Robinson v. Schiltz, 135 Mo.App. 32, 115 S.W. 472. This was an action to recover damages and the penalty provided by § 4573 Rev.St.1899, (now § 537.350 RSMo 1949, V.A.M.S.), as set out above. The court stated on page 473 of 115 S.W.:

"* * * It is a penal statute as well as, in addition, remedial. Besides compensating the plaintiff, it doubles the compensation and adds outright a penalty of $5. It should be construed with more degree of strictness than an ordinary law for mere compensation. The first clause enacts that, if any person throws down a fence other than one that leads into his own inclosure, he is liable to the party injured by the act. If the fence leads into his own inclosure,

then, by the very terms of the statute, there is no liability. It matters not that the fence may also lead into the inclosure of another. * * *

"Another reason for such view of this particular statute is that in a second clause provision is made for the act of tearing down a fence which leads into both inclosures; thus, to great extent, relieving any doubt or necessity for a strained construction of the first clause. The second clause disallows taking down a partition fence without first giving six months' written notice to 'the person owning the adjoining fields.' * * *"

Frederick v. Bruckner, 124 Mo.App. 31, 101 S.W. 619 is cited to support this alleged error. This was an action to recover damages and penalty for cutting a wire fence in violation of the section of the statute under consideration. It holds the same as the other authority cited by defendant.

■ The trouble with defendant's contention is that the evidence does not support the allegations in his cross-claim, to-wit, that plaintiff tore down and removed the one-half mile of fence. The evidence, we think, shows that all plaintiff did was to take the wire off the rotten posts, which was already down on the ground, and leave it where it was. The clear purpose of removing the rotten posts from the wire was to reconstruct the fence. This is shown by the undisputed evidence that plaintiff cut new posts and distributed them along the right-of-way for the purpose of rebuilding. The trial court was justified in finding that defendant, Monroe, failed to make a case and in finding for the plaintiff on count I of the cross-claim.

Judgment is affirmed in appeal case No. 7819.

STONE, P. J., and RUARK, J., concur.