Myron A. McINTOSH and Mary M. McIntosh,
Plaintiffs-Appellants,

v.

Dennis WHITE, Defendant-Respondent.

No. 8897.

Springfield Court of Appeals.

Missouri.

Oct. 30, 1969.

**76**

Kenneth J. Elliff, Carthage, for plaintiffs-appellants.

James A. Dunn, Carthage, for defendant-respondent.

HOGAN, Presiding Judge.

This is an action on a promissory note. The case originated in magistrate court. On defendant's filing an affidavit for change of venue, the case was certified to the circuit court where it was tried without the intervention of a jury. The trial court found for the defendant and the plaintiffs have appealed.

The instrument in suit is an ordinary demand note in the sum of $1,000.00. It is fully negotiable. Plaintiffs are the payees, defendant the sole maker. The note has not been indorsed or, so far as the record shows, otherwise transferred since it was issued. It is admitted by the defendant that the note was executed on September 15, 1967, and he admits the genuineness of his signature as maker. It is further admitted that the note was given in payment or in part payment for an automobile.

Since the case originated in magistrate court and no set-off or counterclaim was asserted, no responsive pleading was required, § 517.050,[1] and none was filed. However, on counsel's representation that there was " * * * a question about * * * the execution and consideration for the note," the defendant was permitted to show the circumstances in which the note was executed. As the plaintiffs concede, the evidence touching those circumstances is confused and conflicting.

At the time the note in suit was executed, Myron McIntosh had several automobiles he wanted to sell. One of them, a 1963 Cadillac, belonged to McIntosh and his wife; there were three or perhaps four others which belonged to McIntosh's father. The defendant was a used car dealer. According to McIntosh, all the automobiles, along with titles assigned in blank,

---

1. To avoid continual cross-reference to official codifications, statutory references are to V.A.M.S.; references to rules are to V.A.M.R.

were delivered to the defendant for sale. White admitted that the Cadillac "set on my lot" for "about a week," but vigorously denied that title to the Cadillac was ever assigned to him, in blank or otherwise. White testified that the other automobiles were consigned to his father, who operated an automobile auction next door, and "one [of the vehicles] sold through that auction."

In any event, a Mr. Bill Berry, plaintiffs' former son-in-law, became interested in buying the Cadillac. McIntosh denied that he ever agreed to sell the car to Berry because "[h]e had just had a divorce from my daughter, and I knew the situation on his credit rating; he had no money to pay down, so I would not sell it to him but I sold it to Mr. White." Berry and White both denied that they had arranged the sale between themselves; Berry's testimony was that McIntosh agreed to sell him the Cadillac for $2,000.00 and agreed to accept a promissory note as payment. Berry also testified that he had attempted to borrow the full purchase price but was refused, although the bank to which he applied agreed to lend him $1,000.00. This was sufficient to pay the amount McIntosh owed on the car, but in order to pay the balance it was necessary for Berry to sell the automobile he then owned, a Ford.

The three men, McIntosh, Berry and White, discussed the transaction in McIntosh's office after the bank refused to lend Berry the full purchase price. Defendant's testimony was that "at the time" they were "all good friends," and at McIntosh's request he had executed the note in suit "as an accommodation" "so Mr. McIntosh could get his money all at once." McIntosh had then said "when Mr. Berry sells the Ford, he can take this [the proceeds] and pay off the note."

Berry's Ford was delivered to the defendant for sale. Berry fell behind in his payments on the $1,000.00 note he had made at the bank, and McIntosh was advised of Berry's imminent delinquency by his daughter, who had since remarried Berry. Mrs. Berry stated that she had told McIntosh "we were going to have to let it [the Cadillac] go back to the bank," and McIntosh had told her that he would give her the car "as [her] inheritance" from her grandfather who had just died. McIntosh had, it seems, guaranteed Berry's note, and when Berry's impending delinquency came to his attention, McIntosh, in his words, "paid off the note and picked up the note, the chattel mortgage, insurance policy, and also the title that was in Bill Berry's name and took [them] out to her [Mrs. Berry's] house." Mrs. Berry's recollection was that her father had told her she could do what she wanted with the Ford, and when she asked "about the other thousand dollars * * * he said that I didn't have to worry about it, that he was dropping the proceedings." Mr. Berry's Ford was later sold. The proceeds were not applied to the note which the defendant executed; Mr. Berry testified that White had nothing to do with the sale of the Ford, that he "sold it through an ad in the newspaper," and that he used the money "to pay bills with." Nothing was paid on the note and this action followed.

■ No findings of fact nor conclusions of law were made, and the plaintiffs assert that the failure to make such findings was error, in view of the timely request made by the parties. Rule 73.01(b) provides that in cases tried without a jury, the court shall dictate to the court reporter, or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded, and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues. This requirement of Rule 73.01 is mandatory, State ex rel. O'Brien v. Petry, Mo.App., 397 S.W.2d 1, 5 [1]; Witte v. Cooke Tractor Co., Mo. App., 261 S.W.2d 651, 660 [24], but the rule requires that a request for findings be made "before final submission," and the submission is "final" when the evidence and the arguments are finished and

the court takes the case, whether it is taken for immediate decision or merely under advisement preliminary to the rendition of a decision. Payne v. White, Mo. App., 288 S.W.2d 6, 7–8 [1, 2]. In this case, there is nothing in the record of the proceeding, prior to final submission, indicating that either party asked for findings of fact and conclusions of law. It is true that plaintiffs asserted in their aftertrial motion that findings were requested "following trial of this action," but aside from the fact that allegations in aftertrial motions do not prove themselves, Block v. Rackers, Mo., 256 S.W.2d 760, 764 [5], the transcript shows that the trial court rendered a decision as soon as the parties finished the presentation of their evidence. In these circumstances, we must hold that the request made "following the trial" came too late. Payne v. White, supra, 288 S.W.2d at 7–8 [1, 2]. We will assume that all fact issues were found in accordance with the result reached. Rule 73.01(b); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 786–787 [3].

█ Since no responsive pleading was filed, and no findings of fact were made, it is obviously impossible to know what the basis of the trial court's decision actually was. Plaintiffs proceed here on the assumption that the trial court found for the defendant either because it found that the title to the Cadillac was not properly transferred, or because it found that the defendant signed the note as an accommodation maker for the payees. Accordingly, the appellant plaintiffs have briefed and argued two points. The first is that since consideration was given for the note it was enforceable, regardless of the evidence concerning the title; the second point is that the note was not accommodation paper, but if so the accommodated party was Berry, and no consideration was required to pass to the defendant. We will take the case as it has been presented, but it is a court-tried case decided without findings of fact and without any indication of the theory upon which the trial court acted, and therefore we must affirm the judgment if it is correct on any theory supported by the evidence. Edgar v. Fitzpatrick, Mo., 377 S.W.2d 314, 318 [12]; Lossing v. Shull, 351 Mo. 342, 351, 173 S.W.2d 1, 5 [1]; McCrory v. Monroe, Mo. App., 336 S.W.2d 118, 121 [1].

█ We have considered the plaintiffs' argument that the note in suit is not accommodation paper. Berry, under the present law, cannot have been the party accommodated. § 400.3–415(1) requires that the accommodated party be a party to the instrument, and Berry did not sign it.[2] As far as the plaintiffs are concerned, it is true as a general principle that the payee may be the party to whom the accommodation maker lends his name, 11 Am.Jur. 2d Bills and Notes, § 121, pp. 163–164, and under § 400.3–415(5) an accommodation party is not liable to the accommodated party. But a negotiable instrument becomes accommodation paper for the payee only in those cases where it clearly appears that it was executed solely for the purpose of negotiation by the payee to obtain credit, under an agreement that the payee is to provide for payment at maturity and indemnify the maker. Morrison v. Painter, Mo.App., 170 S.W.2d 965, 971 [11]; Paden v. American State Bank & Trust Co., Tex.Civ.App., 103 S.W.2d 243, 245 [2]. The evidence in this case would not support a finding that the payees were the accommodated parties; the only testimony even slanted in that direction was defendant's cryptic statement that he was asked to sign the note "* * * as an accommodation so Mr. McIntosh could get his money all at once." In short, we agree that the note was not accommodation paper, but that is not dispositive of the appeal.

In our view of the matter, the meritorious question is whether or not § 301.-

---

2. For a discussion of this requirement, see Peters, Suretyship Under Article 3 of the Uniform Commercial Code, 77 Yale L.J. 833, 838–839 (1968).

210, which regulates the sale of previously registered motor vehicles, was properly complied with, even though the appellants maintain that compliance with that statute is immaterial. The plaintiffs assume that the note was held unenforceable for want of consideration, and in view of counsel's remarks and the evidence presented, that assumption is reasonable. In this connection, it should be noted that the plaintiffs do not question the availability of the defense of want of consideration as a matter of the law of commercial paper. They do not say that they were within the exceptions provided for in § 400.3-408, and therefore we do not reach nor discuss the possibility of plaintiffs having acquired the rights of a holder in due course. Rather, the appellants have argued the matter of consideration for the note abstractly, maintaining that the trial court should have accepted McIntosh's statement that he sold the Cadillac to the defendant rather than to Berry. The appellants say that Berry's consignment of his Ford to the defendant for sale at the time the Cadillac was sold would constitute a good consideration, and that it is immaterial that defendant received no cash and got no commission from the sale of the Ford. As our capsule statement of the facts shows, there was a dispute as to who purchased the automobile, the defendant or Berry, and possibly the trial court could have reconstructed the transaction as the plaintiffs suggest. Nevertheless, we are inclined to believe that McIntosh intended to sell and did sell the automobile to Berry, and that Berry, finding himself without sufficient means to pay for it, prevailed upon the defendant to sign the note as an accommodation, in the popular sense of that word.

 Even so, the plaintiffs' argument that consideration was given for the note would be well taken if the evidence established that there had been a valid sale of the Cadillac. As a matter of general law, it is elementary that an obligation upon a negotiable instrument may be supported by consideration furnished to someone other than the obligor, 1 Williston, Contracts, § 108, p. 372 (Rev. ed. 1936), and thus it has been held that the delivery of goods by the payee to a third person is a good consideration for the maker's promissory note. Rudolph Wurlitzer Co. v. Rossmann, 196 Mo.App. 78, 87, 190 S.W. 636, 638–639 [1]; Davis-Delcambre Motors, Inc. v. Simon, 246 La. 105, 163 So.2d 553, 558 [7]; Lacy v. Edwards, 170 Okl. 458, 41 P.2d 64, 65 [1]. As we have indicated, however, the plaintiffs unjustifiably minimize the evidence concerning the transfer of the certificate of ownership to the automobile.

The title to the Cadillac was not introduced in evidence, and the trial court was obliged to rely on the oral proof to determine whether or not the title had ever been assigned and delivered as § 301.210 requires. McIntosh testified that he and his wife indorsed the title to the Cadillac "by signing at the bottom of the upper portion * * * and [having] it notarized." He then delivered the title to the defendant, he said, together with the titles to several other vehicles, all indorsed in blank. Defendant categorically denied that the title had ever been assigned or delivered to him. Berry, though his testimony is somewhat inconsistent, denied at one point that he ever *saw* the title to the Cadillac until "after he [McIntosh] gave the title to my wife * * *." When the trial court expressed interest in the transfer of title, Berry was recalled and he then testified that his name was never on the title, and in effect that the Cadillac remained in McIntosh's name until McIntosh indorsed it and assigned the title to Mrs. Berry. Berry did say that he signed an application for the title because that was necessary to get a loan. Mrs. Berry was asked about the title, and she stated that when her father gave it to her, "[it] was just made out to Marie Berry." However, in almost the same breath, Mrs. Berry said she didn't really recall how the title was when she got it. This evidence is admittedly confused and conflicting, but

the conflict was a matter for resolution by the trial court, and we believe it could reasonably have found that no certificate of title was ever delivered to Berry or the defendant.

Taking the evidence in that light, the basis for the trial court's decision is obvious. As this court has recently pointed out, the attempted sale of a previously registered vehicle, even though payment is made and possession is exchanged, is void and does not pass title to the buyer unless, as a reasonably contemporaneous part of the transaction, the seller delivers a properly completed assignment of the previously issued certificate of ownership to the buyer. Galemore v. Mid-West National Fire & Cas. Ins. Co., Mo. App., 443 S.W.2d 194, 197 [1], and cases cited marginally notes 2 and 3. We need not explore the sufficiency of plaintiffs' assignment of the certificate, nor consider the precise interval which may permissibly elapse between delivery of the vehicle and delivery of the properly assigned certificate. It is clear that § 301.210(1) requires both proper assignment and delivery before the sale is complete and valid, Sabella v. American Indemnity Company, Mo., 372 S.W.2d 36, 40 [2], and the delivery must be made soon enough to be considered reasonably contemporaneous with the delivery of the vehicle. Galemore v. Mid-West National Fire & Cas. Ins. Co., supra, 443 S.W.2d at 197 [1]; Kahn v. Lockhart, Mo.App., 392 S.W.2d 30, 34 [3]. Our courts have consistently held that when an automobile is sold, noncompliance with the delivery requirement of § 301.210 renders a purchase money note unenforceable for want of consideration, unless the holder is a holder in due course. Public Finance Corp. of Kansas City v. Shemwell, Mo.App., 345 S.W.2d 494, 497–498 [2]; Smith v. G. F. C. Corp., Mo. App., 255 S.W.2d 69, 71 [4]; C. I. T. Corporation v. Byrnes, Mo.App., 38 S.W.2d 750, 752 [2–5]; Morgan v. Mulcahey, Mo. App., 298 S.W. 242, 245–246 [13, 14]. Upon the record presented, we cannot say that the trial court's decision was clearly erroneous for any reason developed in this court, and accordingly the judgment is affirmed.

STONE and TITUS, JJ., concur.