Mary Lou **ATHERTON** and Alfred Atherton,
Plaintiffs-Appellants,

v.

Harold **ATHERTON**, Defendant-Respondent.

No. 25651.

Missouri Court of Appeals,
Kansas City District.

May 8, 1972.

**514**

James J. Wheeler, Keytesville, for plaintiffs-appellants.

John H. Franken, Robert A. Bryant, Carrollton, for defendant-respondent.

PER CURIAM.

This case originated in the Probate Court of Carroll County, Missouri, wherein the appellants, brother and sister, filed an affidavit to discover assets under Sections 473.340, 473.350, V.A.M.S., in the estate of their deceased father, Lester Atherton. The respondent is also a brother of the plaintiffs and thus all parties are heirs of Lester Atherton.

In the appellants' affidavit to discover assets, they charge in the language of the statute that their brother Harold had concealed, embezzled or otherwise unlawfully withheld personal property of the defendant which should properly be a part of the estate, namely, money, described as the sum of $5000.00 received by Harold from the deceased a short time before his death, and also approximately $280.00 received from the deceased prior to his death.

The respondent was duly served with citation, and in response to the charges in the affidavit, filed his general denial.

At the initial hearing before the probate court, the appellants waived their right to oral examination of the respondent and were granted permission to file written interrogatories directed to respondent, which interrogatories were filed and answered.

In his answers to these interrogatories, the respondent admitted having received $5000.00 from the decedent on December 27, 1967. As to this transaction and the $280.00 also received from the decedent, the respondent stated in his answers to interrogatories:

"4. Answer to Interrogatory No. 4:

Pursuant to an agreement made with Lester Atherton during his lifetime, the $5000.00 was paid to my wife and me for the purchase of a larger home and for furniture to install in said house, with the agreement that we would provide a room in said home for the use and occupancy of the said Lester Atherton, my father, for such time during the remainder of his lifetime, as he desired to maintain our residence as his home. Said sum was paid to my wife and me by a check drawn at the special instance, direction and request of the said Lester Atherton on his account in the Carroll County Trust Company, Carrollton, Missouri by L. H. Atherton acting as Attor-

ney in Fact for the said Lester Atherton on December 27, 1967.

The foregoing transaction was initiated by Lester Atherton and completed at the instance and with the approval of plaintiff Mary Lou Atherton and other members of the family.

As to the approximately $280.00 allegedly received from the deceased, Lester Atherton, prior to his death, I am not familiar with such amount except that more than 10 years prior to his death, I had borrowed small sums of money from my father, Lester Atherton. On several occasions, I had inquired of my father the amount of money I had borrowed from him, as I wanted to repay him; but on each occasion, he stated that if he ever wanted me to repay him, he would tell me what I owed him and that he wanted it. He did not inform me at anytime as to the total amount that I had borrowed from him, and he always refused to accept repayment thereof when I had the money available and offered to pay him."

The issues thus raised were tried before a jury in the probate court of Carroll County and that jury returned a verdict in favor of Harold Atherton, which was entered of record and the costs assessed against Mary Lou Atherton and Alfred Atherton.

While no transcript of the testimony in this hearing is in the record before us, it appears that Harold Atherton testified since the petitioners there (appellants here) filed a written general objection to his testimony upon the basis that it violated the "Dead Man Statute" and because "the other party to the transaction is deceased". This objection was overruled.

Mary Lou and Alfred Atherton appealed to the circuit court of Carroll County and after a change of venue and disqualification of judge was granted at their request, the cause was transferred to Ray County and came on for hearing before a special judge, without a jury. During the trial, Harold Atherton was permitted to testify in his own behalf over the renewed objection of plaintiffs, that to permit him to do so violated the provisions of Section 491.010, R.S.Mo., V.A.M.S., the so-called "Dead Man's Statute".

At the conclusion of all the evidence, the trial court took the matter under advisement and on July 13, 1970, the court entered judgment in which it was found that the testimony of Harold Atherton should not have been admitted under the provisions of Section 491.010 R.S.Mo., V.A.M.S., and his testimony was stricken from the record. The court below thereupon found all issues in favor of the defendant, Harold Atherton, and against the plaintiffs, Alfred Atherton and Mary Lou Atherton. The appeal to this court followed in due course.

The appellants raise only one point in their brief, which is general in terms and thus is not in compliance with the rules. It appears, however, that their position is that the defendant failed to establish either a contractual relationship between him and his father, Lester Atherton, or a gift from his father to him. On the other hand, the respondent asserts that he came into possession of the $5000.00 under a valid agreement with his father and that the other sum stated in the discovery affidavit to be $280.00 was either a debt which has been fully paid or a gift. In fact, the record before us reveals that there was no substantial factual dispute between the parties, except as to one matter which will be hereinafter discussed.

██ The scope of our review of this court-tried case is defined in Section 510.310(4), R.S.Mo., V.A.M.S., and Rule 73.01(d), Rules of Civil Procedure, V.A.M.R. We review both the law and the evidence as in suits of an equitable nature; the judgment is not to be set aside unless clearly erroneous and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses.

Schmitt v. Pierce, Mo. en banc, 344 S.W. 2d 120, 122; Peerless Supply Co. v. Industrial Plumbing and Heating Co., Mo., 460 S.W.2d 651, 657.

■ None of the parties below requested findings of fact or conclusions of law before final submission, nor did the trial court indicate the grounds for his decision. Under such circumstances, we must assume that all fact issues were found in accordance with the result reached. Rule 73.-01(b), Rules of Civil Procedure. Also, as was said in McIntosh v. White, App., 447 S.W.2d 75, 1.c. 78:

"* * * We will take the case as it is presented, but it is a court-tried case decided without findings of fact and without any indication of the theory upon which the trial court acted, and therefore we must affirm the judgment if it is correct on any theory supported by the evidence. Edgar v. Fitzpatrick, Mo., 377 S.W.2d 314, 318 [12]; Lossing v. Shull, 351 Mo. 342, 351, 173 S.W.2d 1, 5 [1]; McCrory v. Munroe, Mo.App., 336 S.W.2d 118, 121 [1]."

In reviewing the evidence, we shall refer to the appellants as plaintiffs or as Mary Lou and Alfred, and to the respondent as defendant or Harold.

Lester Atherton, a widower, lived alone on a small farm outside the town of Carrollton, Missouri in an "unmodern" house. He was the father of seven children at the time of the events here involved. They were

Mrs. Maymie Atherton Zellers, a daughter, who lived in Kansas City, Missouri.

Mary Lou Atherton, a daughter, who lived in Kansas City, Missouri and is a plaintiff in this action.

Alfred Atherton, a son, who lived in Wakenda, Missouri and is a plaintiff in this action.

Harold Atherton, a son, who lived in Carrollton, Missouri and is the defendant in this action.

Elsie Hodson, a daughter, who lived in Carrollton, Missouri.

Gerald Atherton, a son, who lived in Carrollton, Missouri.

Louie (Bill) Atherton, a son, who lived on a rural place about 20 miles from his father and who died about a week before the trial below.

Lester Atherton was 78 years old, suffered from palsy, asthma, respiratory problems and hardening of the arteries. For a number of years he had expressed an interest in moving into Carrollton from the country. Although there was substantial testimony that he was in fair physical condition for a man his age and had his mental faculties, the family and his doctor were all of the opinion that he should not live alone on the farm. However, none of the children had the ability to house or care for him in their homes or were unwilling to do so.

The defendant Harold and his wife Helen lived with a daughter in a two-bedroom trailer which they owned on ground which they owned, and Helen testified that they were free of debt.

After a short stay at a hospital in November 1967, and on December 3, 1967, arrangements were made to place Lester Atherton in a rest home in Carrollton. However, after a short time, he called a taxi and without permission of his doctor or knowledge of his family left the rest home and declared he would not return there.

On December 25, 1967, at a conference at the trailer home of Harold, there were present Harold and his wife Helen, Mary Lou, a plaintiff herein, Louie (Bill) and his wife Evelyn, Gerald Atherton and Lester Atherton. There was substantial evidence (from others than the defendant Harold) that at this meeting it was agreed between Lester and Harold, with the approval of all present, that Lester Atherton would advance to Harold the sum of $5000.00 with which to make a down pay-

ment on a house in Carrollton and to purchase additional furniture so that Lester could make his home with Harold and his family. In addition to the initial advancement, Lester was to pay $50.00 per month toward household expenses and Harold and his wife were to take care of Lester as long as he lived.

At that time and again on December 27, 1967, Lester Atherton attempted to sign a check, but because of his palsy was unable to do so. (Defendant's Exhibit A). Mary Lou testified that on prior occasions, Lester had attempted to sign checks for this purpose. He had a checking account at the Carroll County Trust Company upon which account his son Louie and his daughter Elsie Hodson were authorized to sign.

On December 26, 1967, Lester Atherton was taken to see a Doctor Vineyard at Carrollton because he had a flareup of asthma and respiratory troubles, and on December 27, 1967, Doctor Vineyard put him back in the hospital. The evidence was clear that at this time none of the children thought their father was fatally ill, and indeed, Doctor Vineyard assured the family that he was not; that he would only be in the hospital a few days and then the family would have to take him out and make arrangements for his care because Doctor Vineyard said: "they were not running a nursing home."

On December 27, 1967, Harold, Mary Lou and Louie met at Louie's home. Harold had found a home to meet the situation and needed the check for $5000.00 as agreed. Louie tried to reach his sister Maymie Zellers by telephone, but was unable to do so. He then called Elsie Hodson and secured her approval to write the check. He then drew a check to "H. D. Atherton" on Lester Atherton's account for $5000.00 and gave it to Harold. This was done in accordance with the agreement made by Lester two days before and with full knowledge and consent of four of Lester's seven children.

Harold and the plaintiff, Mary Lou, then went to the bank where the check was deposited to Harold's account. They then went to a real estate office where Harold signed a real estate contract to purchase the house in question for $15,000.00. Mary Lou saw this contract on that occasion. (Defendant's Exhibit B). He paid $1500.00 as a deposit (Defendant's Exhibit C), agreed to pay another $1500.00 at closing, and to execute a note for the $12,000.00 balance. On the same day and on December 28, 1967, Harold's wife, Helen, purchased needed furniture for the expanded living quarters in the amount of $574.28 (Defendant's Exhibits D, E and F). All of these agreements and arrangements in connection therewith were made with the full knowledge and approval of plaintiff Mary Lou Atherton. Plaintiff Albert was out of town.

On December 29, 1967, Lester Atherton died. The record is completely devoid of medical evidence as to his condition from December 26, 1967 or the cause of his death.

While the testimony of the witnesses varies in some unimportant details from the foregoing related facts, there is no substantial dispute concerning them. The dispute arises from the testimony of plaintiff Mary Lou and her sister, Elsie Hodson, that they were "under the impression" or "thought" that the title to the property was to be taken in the name of Lester Atherton. Their testimony in this regard is not persuasive because neither stated that such "impression" or "thought" was specifically mentioned or agreed upon at anytime. On the contrary, there was positive, direct testimony that at the family conference on December 25, 1967, it was discussed and agreed that the title would be taken in the name of Harold and his wife. There is no evidence that any of the other children agreed to undertake or pay any portion of the $12,000.00 mortgage which the defendant and his wife Helen obligated themselves to pay. This obligation became and

was Harold's and Helen's sole responsibility, all in accordance with the agreement made and finalized with Lester Atherton, the father, on December 25, 1967.

Neither did any of the other children agree to assume the care of their father when he was released from the hospital.

■■■ A detailed and careful review of the whole record leads us to the conclusion that there was a valid agreement between Lester Atherton, the father, and the son, Harold Atherton, defendant herein, supported by valuable considerations, and that such agreement so far as Harold was concerned was fully performed, so far as possible. Harold purchased a home of sufficient size to accommodate his father, purchased furniture for his father's and general family use, sold his trailer home, and personally obligated himself to the extent of $12,000.00. He did so in consideration of the $5000.00 paid for this purpose by Lester. That part of the agreement providing for the care of the father in the Harold Atherton home in return for a monthly payment of $50.00 became impossible of performance by reason of Lester's death.

In our view, this evidence does not establish a gift either *inter vivos* or *causa mortis* and, indeed, we do not understand that the defendant ever contended or now contends that this was a gift situation. He pled (interrogatory answers) an agreement or contract and there was ample proof thereof. We add that this conclusion is reached without resort to the stricken testimony of the defendant Harold Atherton, although some doubt exists as to whether such testimony was properly stricken. A determination of that question is not necessary to this decision.

■ We adopt the principle that a valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or *responsibility* given, suffered or *undertaken by the other*. Charles F. Curry & Co. v. Hedrick, Mo., 378 S.W.2d 522, 533; Perbal v. Dazor Mfg. Co., Mo., 436 S.W.2d 677, 697; Wells v. Hartford Accident and Indemnity Co., Mo. en banc, 459 S.W.2d 253, 260–261.

■ With regard to the other fund of $280.00 allegedly due from Harold to Lester, the plaintiffs offered some evidence that Harold had upon one occasion mentioned that he owed his father that amount by reason of small loans made a number of years previously. Also, Helen Atherton testified that she had asked Lester what, if anything, Harold owed him, and Lester would not say, except words to the effect that if he, Lester, "ever wanted or needed it, he would ask for it." This evidence falls far short of substantial proof of a debt or any specific sum which Harold (as charged), "concealed", "embezzled" or "otherwise unlawfully" withheld from the estate.

On the other hand, defendant offered proof by cancelled checks that Mrs. Helen Atherton had in fact repaid Lester Atherton, during his lifetime, the sum of $275.00 representing small loans to Harold (Defendant's Exhibits G, H and I).

The cases of Michaelson v. Wolf, 364 Mo. 356, 261 S.W.2d 918, and In re Estate of Simms, Mo., 423 S.W.2d 758, cited by appellants, are not pertinent here because both involved the law relative to gifts and this case does not fall within that ambit and is not ruled by those principles.

We reach the same conclusion as the trial court, and the judgment is therefor affirmed.