Louise NUTZ, Plaintiff-Respondent,

v.

Kenneth SHEPHERD, Defendant-Appellant,
and
Clinton S. and S. Construction Company, Inc.,
a Missouri corporation, and Philip H. Ashmore, an individual, d/b/a Midwestern Properties Company, Defendants.

No. 9212.

Missouri Court of Appeals,
Springfield District.

Jan. 22, 1973.

Ike Skelton, Lexington, Krings, Stewart, Whipple, Mauer & Eisler, Kansas City, for defendant-appellant.

Richard M. Webster, Myers, Webster, Perry, & Elliston, Webb City, for plaintiff-respondent.

BILLINGS, Judge.

In this jury-waived suit plaintiff had judgment for $16,424.00 against defendant arising out of defendant's assumption of a mortgage debt as a grantee in a deed of conveyance of real estate. For the reasons hereinafter appearing we affirm the judgment.

Default was made on the mortgage debt and at the foreclosure sale plaintiff bid in the property for $1,000.00 and brought suit against defendant and others. Plaintiff dismissed her claim against Philip Ash-

more and the trial court sustained motions to dismiss as to Clinton S. and S. Construction Company, Inc., and as to other counts against defendant Shepherd. Defendant Shepherd has appealed from the rendition of the judgment against him for the deficiency under the assumed note.

The determinative issue is whether defendant Shepherd personally assumed and agreed to pay the indebtedness owing plaintiff under a first deed of trust on the property, or, the assumption was by a corporation of which defendant was president. The resolution of this issue turns on whether changes in the deed containing the assumption clause were made prior to the transfer of the property and were authorized by the parties involved.

Since in this appeal the sufficiency of the evidence to support the lower court's judgment is challenged we detail the pivotal evidence heard by the trial court.

In early 1969 the property was sold by Mr. and Mrs. Nutz (he was deceased at time of trial) to Roland and Maxine Moore. The Moores paid $600.00 at the time of the purchase and gave their note for $14,400.00, the note being secured by a first deed of trust on the property. On October 1, 1969, the Moores, through the efforts of Midwestern Properties Company, entered into a sale agreement with Clinton S. and S. Construction Company, Inc., of which defendant was president. The agreement provided for a total sale price of $18,400.00, payable as follows: $2,200.00 to be paid the sellers; $1,800.00 commission to be paid the real estate agency; and, the assumption of the $14,400.00 indebtedness against the property by the purchaser. To secure payment of the real estate commission the purchaser agreed to execute a second deed of trust on the property. For the purchaser the agreement was signed by the defendant in his capacity as president of the corporation.

The Moores desired to be released from their liability on the Nutz note and a "financial statement" of the corporation repre-

senting its equities in various other properties in the total sum of $402,700.00 was shown the Moores and Mr. and Mrs. Nutz. On October 6, 1969, a letter prepared by the real estate agent was signed by plaintiff and her husband releasing the Moores of all liability and accepting the corporation as the new owner and debtor.

The Moore sale was closed on October 6, 1969, by Philip Ashmore of Midwestern. This agency had also handled the earlier Nutz to Moore transaction. The warranty deed, the note in payment of the real estate commission, and the granting and purpose clauses of the second deed of trust had been originally drafted so as to describe "Clinton S. and S. Construction Company—Kenneth Shepherd—President" as the grantee, maker and grantor respectively. However, Ashmore testified that in order to protect Midwestern's commission and for "other reasons" he felt the transactions should be with the defendant individually and at his direction the corporate name and term "president" were x-ed over by typewriting. He said this was done before the transaction was closed and the documents were signed; that he explained the change to the Moores and to the defendant and approval was given to the change. The documents were thereafter executed by the parties, acknowledgements taken, and the deed and second deed of trust were subsequently recorded on October 30, 1969.

The Moores, testifying by deposition, "thought" they were transferring the property to a corporation, "understood" the deed was to the corporation, but could not remember one way or another whether the x-ing had been made on their deed at the time they signed it. Neither of them ever met or talked with the defendant and there was no discussion about deeding the property to a person or an officer of the corporation in his name alone. They received a note for $2,200.00 signed by the defendant as president of the corporation from one of the real estate agents and it had never been paid.

Defendant denied any conversations at the closing concerning changing the transaction from a corporate purchase to his individual purchase and it was his intention and "understanding" that the corporation take title and assume the mortgage debt. He did not have any recollection or any knowledge of "how these x's appeared on that warranty deed". He signed "these papers" as president of the corporation. He never agreed to take title individually and assume the existing indebtedness. He first learned the deed was to him individually and that he had signed the second deed of trust as an individual from his lawyer after plaintiff brought suit against him.

■ In this court-tried case the scope of our review is governed by Rule 73.01(d), V.A.M.R. And while it is our duty under this rule to review the case upon both the law and evidence the judgment is not to be set aside unless clearly erroneous, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Further, that where there is a direct conflict in the testimony deference is to be given the trial court's conclusions. Kester v. Jeter, Mo.App., 481 S.W.2d 510; Del Monte Corp. v. Stark and Son Wholesale, Inc., Mo.App., 474 S.W.2d 854; Dill v. Poindexter Tile Co., Mo.App., 451 S.W. 2d 365; Schmitt v. Pierce, Mo., 344 S.W.2d 120.

■ No findings of fact or conclusions of law were requested by the parties, nor did the trial court indicate the grounds for his decision. We must therefore assume all fact issues were found in accordance with the result reached. Rule 73.01(b), V.A.M. R.; Atherton v. Atherton, Mo.App., 480 S.W.2d 513. Also, as was said in Dill v. Poindexter Tile Co., supra, 451 S.W. 2 l. c. 371: ". . . (I)n court-tried actions we are obliged to accept as true the evidence and all permissible inferences therefrom favorable to the prevailing party and disregard such testimony as is contrary thereto [cases], and not to set aside the judgment unless it is clearly erroneous."

■

■ Defendant's first point in his brief is "The Judgment Against The Defendant Kenneth Shepherd In Favor of Plaintiff Is Against The Weight of The Evidence". Such assignment violates Rule 84.04(a) and (d) V.A.M.R. and presents nothing for review on appeal. Shell-Con, Inc. v. Architectural Concrete, Inc., Mo.App., 486 S.W. 2d 662; Stanziale v. Musick, Mo., 370 S.W. 2d 261. An assignment that the verdict or judgment is against the weight of the evidence implies that there was some evidence to support it. Robbins v. Robbins, Mo., 328 S.W.2d 552. It does not purport to raise the issue of the sufficiency of the evidence to support the judgment of the trial court. Shell-Con, Inc. v. Architectural Concrete, Inc., supra; Bowers v. Spinaio, Mo.App., 421 S.W.2d 790.

In his remaining points defendant contends (1) there was no creditable evidence that defendant knowingly agreed to assume the mortgage debt and (2) that there was no meeting of the minds between the Moores and himself as to whom the warranty deed was to be directed and as to whom was to assume the debt. We conclude both assignments are directed to the sufficiency of the evidence to support the judgment for plaintiff and will treat them accordingly.

In our view the record demonstrates that insofar as the Moores were concerned they had become disenchanted with their acquisition of the property (known as "Cozy Courts") and in connection with a sale of the premises their paramount consideration was being released of personal liability on their note. Additionally, to realize a profit and avoid any real estate commission on the sale. And, as previously noted the Moores "thought" and it was their "understanding" the corporation was taking title and assuming the mortgage debt. This was contradicted by Philip Ashmore, their agent for the sale. He was asked specifically about advising the Moores as to who was to be the grantee in their deed.

"Q. And did you at that time explain to them that this was being deeded to an individual?

A. Yes, sir."

As to defendant's knowledge and awareness as to his being the grantee in his individual capacity, and consequently assuming personal liability for the mortgage debt, Ashmore testified as follows:

"Q. I want to hand you what has been marked as Plaintiff's Exhibit 4, which is in the style of a warranty deed and ask you first to examine this document and I want to ask you, sir, with regard to the signing of that document by Mr. and Mrs. Moore do you know when X's were placed on it removing the words C. and H., or C. and S. Construction Company—Clinton S. and S. Construction Company and the word President?

A. Yes, sir, this was done prior to closing and prior to signing.

Q. It was in the condition that it is at this time at the time it was closed and signed by Mr. and Mrs. Moore?

A. Yes, sir.

Q. Did you have any conversation about that document with Mr. Shepherd prior to the time that it was closed and signed by Mr. and Mrs. Moore?

A. Yes, sir.

Q. Did you specifically have any conversation with regard to the X's that appear on there?

A. Yes, sir.

Q. And what was the nature and the extent of that conversation?

A. I felt at the time that the information that I had seen—that for all parties involved, the buyer, seller, everyone involved in that transaction, including the realtor, that personal signature was required. So, I made the X's rather than any other alterations required and just put Kenneth Shepherd personally.

Q. I want to hand you what has been marked Plaintiff's Exhibit 5 which appears to be a note and a deed of trust from Kenneth Shepherd to Philip H. Ashmore, and I will ask you if your recognize that document as being a photostatic copy of a deed of trust which was delivered to you?

A. Yes, sir.

Q. Now, I note on that particular document on the front page, the same general style appears, that is, originally it was typed Clinton S. and S. Construction Company—Kenneth Shepherd, President, and the Clinton S. and S. Construction Company was stricken out and the president X'd out. Was that document in that form at the time Mr. Shepherd signed it?

A. Yes, sir. All the documents were prepared at the same time at the closing.

Q. They were prepared at the same time?

A. Yes, sir.

Q. Did you have any conversation with Mr. Shepherd with regard to this document indicating that it should be his personal obligation?

A. Yes, sir.

Q. All right, I note on this in the acknowledgement that it is the acknowledgement of an individual and not that of a corporation?

A. Yes, sir.

Q. Do you know whether or not Mr. Shepherd was aware at the time he executed this deed of trust that he was executing it as an individual?

A. The man indicated that this was okay when it was explained to him, the reason for it."

■■■ Ordinarily one's understanding about a matter is not competent evidence, and what a witness "thought" or "didn't think" does not usually constitute substantial evidence justifying or permitting a finding to that effect. Dill v. Poindexter Tile Co., Mo.App., 451 S.W.2d 365; Cox v. McKinney, 212 Mo.App. 522, 258 S.W. 445; Armstrong v. Croy, Mo.App., 176 S.W.2d 852. If Ashmore's testimony was true, and we must assume that it is because the trial court resolved the conflicting evidence in plaintiff's favor [Dill v. Poindexter Tile Company, supra, 451 S.W.2d 1. c. 372], then both the grantors (Moores) and the grantee (defendant) knew and agreed the title was being transferred to defendant as an individual and that he, not the corporation, was therefore assuming the mortgage debt. Furthermore, that the descriptive changes in the drafted documents were made before their execution by the parties and with their knowledge and acquiescence.

In support of the lower court's judgment, the record also reflects defendant was not a novice in real estate transactions. He was president of a corporation engaged in the business of "buying, selling, holding and developing real estate." He had acquired real estate in his individual capacity and thereafter transferred it to the corporation. He had conveyed properties in his corporate capacity as president and "presumed" such deeds and deeds of trust had been attested by the corporation's secretary and that the corporate seal had been affixed thereto. He acknowledged the second deed of trust in his individual capacity and this instrument made specific reference to the outstanding deed of trust. Section 442.210, V.A.M.S., prescribes the form to be used for a corporate acknowledgement and it is not contended the defendant acknowledged this trust deed in such capacity.

■■■ Defendant's intention to accept the title to the property in an individual capacity is to be gleaned from his words and acts. Express words and positive acts are not necessary; intention to accept may be inferred from such conduct as conveying or mortgaging the property. 23 Am.Jur.2d, Deeds, § 128 at pp. 177–178. In Benton Land Co. v. Zeitler, 182 Mo. 251, 81 S.W. 193, this principle was recognized and followed where the defendants raised a question of non-delivery of a deed. In disposing of the matter the Missouri Supreme Court said (81 S.W. at p. 202) : "Two complete answers to this contention are apparent in this case: First, there was no issue as to the delivery of that deed tendered or tried in the circuit court; and, second, the fact that the conveyance was beneficial to Nesbit, and the fact that thereafter Nesbit *dealt with the property as owner by giving two deeds of trust upon it,* and then conveying the equity of redemption . . . ." (our emphasis) Also see Hafford v. Smith, Mo.App., 369 S.W.2d 290, and cases cited therein.

Following the closing transactions, possession of the subject property was taken by the defendant, as evidenced by the following portion of his deposition received as admissions against interest:

"Q. When *you* acquired the property did *you* make any physical changes in it?

A. Yes.

Q. What did *you* do?

A. *I* paid a contractor $2,000.00 to clean out the furniture and haul the rest of the junk off . . . ." (emphasis added)

■■■ After the foreclosure sale one of plaintiff's attorneys wrote the defendant concerning the remaining mortgage indebtedness. Defendant's reply letter, marked as exhibit but not formally offered or received in evidence but nevertheless treated as such in the examination and cross-examination of defendant and therefore an exhibit in the case, [Bolhofner v. Jones, Mo.

App., 482 S.W.2d 80] was written on a letterhead of "Commercial Furniture Sales and Leasing, Inc." and signed by defendant individually. Although the letter contained phrases such as " . . . [W]e have been unable to secure a construction loan . . . " and " . . . [W]e cannot make the due payment so will turn this property back to Mrs. Nutz. We have spent approximately $2,500.00 . . . which we feel is ample compensation for anything that Mrs. Nutz might be out.", the defendant did not disclaim his liability or suggest the liability was that of the corporation.

The trial court, considering Ashmore's testimony, defendant's mortgaging of the property, the possession of and acts of ownership while in possession of the premises, could have properly found defendant knew and intended to take the title, with the attendant assumption agreement, in his name individually.

In the argument portions of his brief defendant states he "did not even receive the deed after recording" and asserts the testimony of Ashmore was inadmissible and of no probative value. Since these matters are not stated under "Points Relied On" they are not for our consideration. Rule 84.04(d), V.A.M.R.; Del Monte Corp. v. Stark and Son Wholesale, Inc., Mo.App., 474 S.W.2d 854; McGehee v. McGehee, Mo.App., 448 SW.2d 300. We therefore decline any invitation to consider the same but would (a) direct defendant's attention to Ragan v. Ragan, Mo., 445 S.W.2d 825, and Hafford v. Smith, Mo.App., 369 S.W.2d 290 as to the burden of proof where the issues are non-delivery or lack of acceptance of a deed, and, (b) observe that Ashmore's testimony was received without objection or motion to strike by defendant. Also, we cannot agree that this testimony was not competent or relevant on the issues presented to and determined by the trial court. As noted at the outset, the time of and authority for describing the defendant as the grantee in the Moore deed was the crux of plaintiff's claim against defendant. Ashmore's testimony went to the heart of these matters.

We have examined the cases cited by defendant and concluded they do not aid him in this appeal. In the main they enunciate various principles of the law of agency which we do not here consider applicable. However, Hafford v. Smith, Mo. App., 369 S.W.2d 290, defendant's principal authority, followed the law of this state in holding that where a deed expressly provides for the grantee's assumption of an outstanding mortgage a grantee controverting such a provision, after accepting it, must resort to equity to do so, and has the burden of proving non-assumption by clear and convincing proof.

Since Heim v. Vogel, 69 Mo. 529, the rule of law in this state has been that if a grantee takes a deed containing a recital that the land is subject to a mortgage which the grantee assumes, or agrees to pay, a duty is imposed on him by the acceptance, and the law implies a promise to perform it. Such a grantee subjects himself to personal liability. Hafford v. Smith, Mo.App., 369 S.W.2d 290, 295 & n. 6. The trial court, in entering judgment for plaintiff, of necessity determined defendant personally assumed the mortgage debt.

The judgment is affirmed.

TITUS, C. J., HOGAN, J., and COTTEY and GREENE, Special Judges, concur.

STONE, J., not sitting.